FLYING TIGER LINE, Inc. v. CIVIL
AERONAUTICS BOARD.

No. 11529.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 13, 1953.

Decided May 7, 1953.

Mr. Elmer E. Batzell, Washington, D. C., with whom Mr. Norman L. Meyers, Washington, D. C., was on the brief, for petitioner.

Mr. O. D. Ozment, Civil Aeronautics Board, Washington, D. C., with whom Mr. Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, Mr. John H. Wanner, Associate General Counsel, Civil Aeronautics Board, Washington, D. C., Mr. Lester M. Bridgeman, Washington, D. C., Civil Aeronautics Board, and Mr. Edward P. Hodges, Acting Asst. Atty. Gen., Department of Justice, were on the brief, for respondent.

Mr. Charles H. Weston, Chief, Appellate Section of the Antitrust Division, Department of Justice, Washington, D. C., entered an appearance for respondent.

Before EDGERTON, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review an order of the Civil Aeronautics Board which directed The Flying Tiger Line, Inc. (called "Tigers" by the parties) to cancel a tariff containing terms for charter carriage of passengers.

Tigers is certificated to carry freight by air over a designated route. It claims that by virtue of that certificate it is authorized to carry passengers by charter and to perform any other special service, and that it may do so between any points. It says that the statute itself[1] adds that authority to the to the authority specified in the certificate.

Paragraph (a) of section 401 of the statute[2] provides, in pertinent part:

"(a) No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation: * * *."

The first sentence of paragraph (f) of that section provides, in pertinent part:

"(f) Each certificate issued under this section shall specify the terminal points and intermediate points, if any, between which the air carrier is authorized to engage in air transportation and the service to be rendered; * * *."

The disputed last sentence of that paragraph is:

"Any air carrier may make charter trips or perform any other special service, without regard to the points named in its certificate, under regulations prescribed by the Board."

Tigers says the last-quoted sentence should be interpreted to mean exactly what its words say—that an air carrier, which means a carrier with a certificate, any kind of a certificate, can perform charter or any other special service; and that it may do so without regard to the points designated in its certificate. The sentence, says Tigers, is an unequivocal grant of authority.

The Board says that the last-quoted sentence is the closing sentence of a paragraph which begins with the opening sentence we have quoted; and that it must be read in that context. Thus read, says the Board, the last sentence merely lifts from charter and other special service the limitation respecting points as designated in the certificate. Thus, says the Board, the limitation contained in the certificate respecting the type of service to be rendered—i.e., whether passenger, freight, express or mail—remains unaffected by this last sentence of the paragraph.

We agree with the latter view, the Board's view. It seems to us that this is a sensible reading of the statute. Tigers'

1. Last sentence of section 401(f), 52 Stat. 989 (1938), as amended, 49 U.S.C.A. § 481(f).

2. 52 Stat. 987 (1938), as amended, 49 U.S. C.A. § 481(a).

construction would materially upset what seems to us to be a careful congressional plan. Congress provided that the Board might classify carriers according to the nature of the services performed.[3] It provided that no carrier should engage in air transportation without a certificate [4] and that every certificate should specify the service to be rendered under it.[5] It provided that the Board might exempt carriers from the requirements of the Act.[6] Tigers' construction would permit carriers with a certificate specifying one type of service to perform by special arrangement any other type of service without either certificate or exemption order. We think Congress would not have disrupted the general basic plan of the statute by a single obscure and ambiguous sentence placed at the end of a long paragraph.

We agree with the Board that, if every certificate automatically carried an unlimited special service provision, chaos in regulation would result. Under an interpretation of the statute which would confer unlimited special service authority on every certificated carrier, the Board would have to keep in mind, as it considered any application for a certificate for any type of service, that the carrier would thereby be entitled to be an unlimited competitor in the passenger charter business and in any other special service business.

 There is internal evidence in the disputed last sentence of paragraph (f) which tends to refute Tigers' contention. Tigers says that "service" in the phrase "special service" refers to the type of service (passenger, freight, express, etc.) meant by the classification provision in section 416(a) [7] and in the first sentence of paragraph (f). The Board says that "special service" means merely a special arrangement of some sort, the conditions under which the transportation is to be performed.

The statute reads "* * * may make charter trips or perform any other special service * * *." The "other" indicates that the special service described is of a nature like a charter trip, i. e., some sort of special arrangement.

The Board's order does not affect private or non-common carriage of either persons or property. Furthermore, charter transportation of passengers can be conducted by Tigers under exemption orders issued by the Board for such business under the exemption power conferred by section 416(b) of the statute.[8] In fact a number of such orders have been issued to Tigers.

Tigers presses arguments based upon legislative history, but we find nothing persuasive there. It also bases an argument upon the presence of the first comma in the disputed sentence, but that contention also lacks persuasiveness.

Affirmed.

---

3. 52 Stat. 1004 (1938), as amended, 49 U. S.C.A. § 496(a).

4. Supra note 2.

5. 52 Stat. 988 (1938), as amended, 49 U. S.C.A. § 481(f).

6. 52 Stat. 1005 (1938), as amended, 49 U.S.C.A. § 496(b).

7. Supra note 3.

8. Supra note 6.