FRONTIER AIRLINES, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Braniff Airways, Inc. and United Air Lines, Inc., Intervenors.

CITY AND COUNTY OF DENVER, COLORADO, et al., Petitioners,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Braniff Airways, Inc., and United Air Lines, Inc., Intervenors.

Nos. 8052, 8072.

United States Court of Appeals Tenth Circuit.

Aug. 12, 1965.

James L. Highsaw, Jr., Washington, D. C. (Richard A. Fitzgerald and Harry A. Bowen, Washington, D. C., of counsel, were with him on the brief), for petitioner Frontier Airlines, Inc.

Tedford Dees, Asst. City Atty. (Max P. Zall, City Atty., was with him on the brief), for petitioners City and County of Denver, Colo., and Denver Chamber of Commerce.

O. D. Ozment, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Lionel Kestenbaum, John H. Wanner, Joseph B. Goldman and Robert L. Toomey, Washington, D. C., were with him on the brief), for respondent Civil Aeronautics Board.

John T. Rigby, Washington, D. C. (B. Howell Hill and Arnold, Fortas & Porter, Washington, D. C., were with him on the brief), for intervenor Braniff Airways, Inc.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., and Akolt, Shepherd & Dick, Denver, Colo., filed brief for intervenor United Air Lines, Inc.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Frontier Airlines and the City and County of Denver, Colorado, by separate petitions now consolidated for hearing, seek review of and relief from orders of the Civil Aeronautics Board issued in a pending proceeding designated as the Pacific Northwest-Southwest Service Investigation, C.A.B. Docket 15459. The proceeding, initiated by the Board on August 13, 1964, pursuant to sections 204(a) and 401(g) of the Federal Aviation Act of 1958, was intended to probe the necessity and desirability of providing carrier authorization for long-haul, single carrier service between the Pacific Northwest (Washington, Oregon, Idaho, Wyoming, Utah and Northwest Colorado), and the Southwest (Southeast Colorado, New Mexico, Kansas, Oklahoma, Texas, Louisiana, and the cities of Kansas City and St. Louis, Missouri). Principal service cities within the area were designated by group number which placed Seattle and Portland in Group I; Salt Lake City and Denver, Group II; Kansas City and St. Louis, Group III; and Fort Worth, Dallas, Houston, San Antonio, and New Orleans, Group IV. The original Board order included the following restrictions as to the scope of the inquiry to be made as set forth in paragraph 3 of the order:

"3. That any awards made as a result of this proceeding shall be subject to the following restrictions:

(a) No flights may originate or terminate in Denver or Salt Lake City;

(b) At least one city in at least two Groups of cities * * *

must be served on all flights except that there shall be no new single-carrier service between cities in Group III and cities in Group IV

\* \* \*."

Following issuance of its August 13 order the Board gave consideration to numerous petitions filed by interested airlines and cities seeking clarification, expansion or restriction of the order. Most such petitions were denied but paragraph 3(a) was modified by allowing consideration of short-haul, inter-city service between Denver-St. Louis,[1] and 3(b) was changed to provide that there should be no operation of aircraft between cities in Groups III and IV. However the substance of paragraph 3(a), that no flights may originate or terminate in Denver or Salt Lake City, remains a basic restriction in the scope of the Board's investigation. The effect of this restriction is to refuse consideration of any application or the need for turnaround service by single carrier for flights originating or terminating in Salt Lake City or Denver and serving the Northwest cities of Group I, or the Southwest cities of Group IV, or between the cities of St. Louis/Denver and the city of Salt Lake. The continuance of this restriction, admittedly made by the Board without evidentiary hearing, constitutes the premise of both petitioners' complaint.

Frontier is presently certificated to operate commercial aircraft over a route system extending across a vast geographic area from Montana and North Dakota east to Kansas City, south to Arizona and west to Utah. Prior to the Board's August 13 order Frontier had filed two applications for authorization to provide extended or new service. On October 3, 1962, Frontier had sought a certificate to serve St. Louis and Seattle

(a) via Kansas City, Omaha, Lincoln, Denver, Salt Lake City, Spokane, and Portland, and (b) via Columbia and St. Joseph, Missouri; Omaha and Lincoln, Nebraska; Rapid City, South Dakota; Billings and Great Falls, Montana; and Spokane, Washington. The other application (Docket No. 15304) filed on June 4, 1964, requested a certificate to provide air service over a route between Seattle, Washington; and Miami, Florida; via Portland, Oregon; Salt Lake City, Denver, Dallas/Ft. Worth and Houston, Texas; New Orleans, Tampa/St.Petersburg and Orlando, Florida. Although these applications pertained in part to the Northwest-Southwest Investigation area they also extended beyond such area and subsequently, on September 2, 1964, Frontier filed a third application covering the Board's exact proposed routes. The refusal of the Board to consolidate into its present hearing Frontier's two earlier existent applications, or the substance of them to the extent turnaround service is not to be considered for the cities of Salt Lake and Denver, is the specific complaint made by Frontier in the case at bar.

The specific complaint of the City and County of Denver is substantially the same. Denver has pending a petition to investigate the need for:

"1. First direct single-carrier trunkline authority between Denver, Colorado and St. Louis, Missouri and Tucson, Arizona.

2. Unrestricted direct single-carrier competitive trunkline authority between Denver, Colorado and Albuquerque, New Mexico, Dallas, Houston, and San Antonio, Texas, Kansas City, Missouri, Phoenix, Arizona, Portland, Oregon, Seattle,

---

1. In allowing this extension to the scope of the investigation the Board noted that one of the facets of its original order was to consider the elimination of existent interchange service. Denver and St. Louis are served only by a Continental-Braniff interchange, the latter term meaning a single aircraft operated

by two or more carriers over connecting routes. The situation did not exist elsewhere in the area. Group II cities (Salt Lake and Denver) are served to the northwest by a single carrier (intervenor United) and to the south by a single carrier (intervenor Braniff).

Washington, and Tulsa, Oklahoma."

The Board's restriction 3(a) has also refused present consideration of Denver's petition to the extent that turnaround service is requested except as to the Denver-St. Louis route.

The Board's present refusal to hear matters pertaining to turnaround service at the cities of Salt Lake and Denver is attacked by petitioners in varied ways, but each argument is somewhat dependent upon whether the principle of due process set forth in Ashbacker Radio Corp. v. Federal Communications Commission, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108, is applicable. This principle, termed "a practical conclusion of sound common sense," Delta Air Lines, Inc. v. Civil Aeronautics Board, 107 U.S.App. D.C. 174, 275 F.2d 632, 637, cert. denied, Trans World Airlines v. Delta Air Lines, Inc., 362 U.S. 969, 80 S.Ct. 953, 4 L.Ed. 2d 900, requires administrative boards to consolidate for hearing all applications that are competing and mutually exclusive in nature. In other words, due process is refused an applicant through indirection when a competing application is heard and granted upon mutually exclusive subject matter, for the substance of the applications (need for service) is determined and satisfied by the application first heard. The granting of the first award effectively denies, without a hearing, all competing applications. In the case at bar, claim is made that should the Board, for example, grant certification for a Dallas/Denver/Seattle (and reverse) single carrier flight, such grant would, as a matter of economic fact, deny Frontier's present application for turnaround service between such cities and Denver's application for consideration of increased service between such cities. And it is apparent that, at least to some degree, the establishment of long-haul, through service would affect the need for turnaround service at the centrally located cities of Salt Lake and Denver and the proposed terminal cities. We thus consider the case to be within the shadow of the Ashbacker doctrine and petitioners' related arguments that the Board has prejudged the need for local service originating or terminating at Salt Lake and Denver, that the Board has denied "speedy" consideration of Frontier's and Denver's specific applications, and that the restrictive order of the Board is arbitrary.

The common sense and legal compulsion of the Ashbacker principle is based upon the existence of a mutual exclusivity between applications that is legally and factually irrefutable by the very nature of the proceeding. Thus when two or more airlines seek certification for service between cities A and B, and the Board hears one such application separately, the other applications are doomed upon grant to the applicant heard. The result is inherent in the procedure. Here, exclusivity is but now potential, a possibility that the Board has presently recognized in its order in general aspects [2] and must recognize in its final order if exclusivity becomes a specific reality. And in terming the issue of exclusivity to be but potential at the outset of the Board investigation we are not unmindful of the statistical support that petitioners present which may indicate that certain areas cannot support three carrier services, or that certain areas will not be adequately served by long-haul service. These matters are incidents to the general investigation and are primarily, or at least preliminarily, for the consideration of the Board. Indeed, when presented merely as statistics the inference to be drawn therefrom is not dictated.[3] Frontier may be granted

---

2. "Of course, each party to this proceeding will have the opportunity to establish on the record mutual exclusivity with respect to any application not included for consideration in this case."

3. This is true particularly as it pertains to petitioner Denver. We do not consider it necessary to here decide whether a civic body can make any claim under Ashbacker. But certain it is that Den-

long-haul certification in its pending application, and if so, its remaining applications would be complementary; or, if its own long-haul service satisfied the total service needed between given cities, it is obvious that Frontier would not be prejudiced.

 Although the Board is bound by Ashbacker that principle is not boundless in its implications. The Board has a basic right to limit the scope of its inquiries. Eastern Air Lines v. Civil Aeronautics Board, 85 U.S.App.D.C. 412, 178 F.2d 726; Eastern Air Lines v. Civil Aeronautics Board, D.C.Cir., 243 F.2d 607. And practicality dictates that the existence of overlapping applications does not require the expansion of specific inquiry into a generalized study of air needs by area or types of service. The pertinency of pending applications is a fact that must be noted by the Board in order to avoid the denial of an Ashbacker right; but such pendency does not dictate consolidation. So, too, it is for Board decision to determine the order of its docket in view of public need. Western Air Lines v. Civil Aeronautics Board, 9 Cir., 184 F.2d 545, 549. Although petitioners' earlier applications must probably now await the Board's more general inquiry, we cannot say that this discretionary act so abuses a private right as to be unlawful. The statutory requirement, 49 U.S.C. § 1371(c), that applications be processed "as speedily as possible" does not require that hearings be granted in the order of filing, and it is seldom indeed that a court should interfere with a matter of discretion so peculiarly with the expertise of a specialized administrative body.

Frontier also asserts that the restrictions imposed in 3(a) unfairly discriminate against it in its long-haul application because it establishes a procedural framework that protects the intervenors United Air Lines and Braniff Airways.

United has for many years been certificated for Denver/Salt Lake/Portland/Seattle; Braniff for Denver/Texas cities. These intervenors could thus propose, in support of their own long-haul applications schedules correlated with their existent right to operate turnaround service at the named cities. To allow these airlines to approach the long-haul inquiry with short-haul authority but to refuse consideration by consolidation of Frontier's application for turnaround service amounts to discrimination, so says Frontier. But to extend such argument to ultimate conclusion would require the Board to equalize as far as possible all inherent advantage between applicants before a general investigation could go forward. The complexity of such procedure would destroy its worth and result in a hopeless administrative jumble. We find no merit to the contention of petitioner.

Finally, Frontier claims that the Board's restriction is arbitrary and "without any basis in rhyme or reason." And indeed we feel that Frontier's factual presentation of traffic data and other supporting argument indicates strongly that the Board might very properly have removed the restriction. It does not follow that the Board acted arbitrarily in refusing to do so. The prime purpose of the Northwest-Southwest Service Investigation is directed to long-haul, direct carrier service; it is for the Board to determine the discretionary point at which remoteness of inquiry will be detrimental to public service.

 We have considered other arguments advanced by petitioners, but conclude that none convinces us that the subject order of the Board presently results in the setting of legal consequences in derogation of petitioners' rights. It follows that the order of the Board is not a final order as defined in Cities Service Gas Co. v. Federal Power Commission,

ver has no legal interest in which airline services its needs. However, we consider petitioners' claims that the need for turnaround service at Denver has been prejudged by the Board order to,

in effect, raise a comparable question of due process not necessarily dependent upon mutual exclusivity, but substantially the same in basic theory.

10 Cir., 255 F.2d 860, 863, cert. denied, 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73; Phillips Petroleum Co. v. Federal Power Commission, 10 Cir., 227 F.2d 470, 475, cert. denied, Michigan Wisconsin Pipe Line Co. v. Phillips Petroleum Co., 350 U.S. 1005, 76 S.Ct. 649, 100 L.Ed. 868; City of Houston v. Civil Aeronautics Board, 115 U.S.App.D.C. 94, 317 F.2d 158; Delta Air Lines v. Civil Aeronautics Board, 97 U.S.App.D.C. 46, 228 F.2d 17, 20; but that it is interlocutory in form and fact and thus not subject to review. See Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 330 U.S. 103, 112–113, 68 S.Ct. 431, 92 L.Ed. 568; Amerada Petroleum Corp. v. Federal Power Commission, 10 Cir., 285 F.2d 737; United Air Lines, Inc. v. Civil Aeronautics Board, D.C. Cir., 228 F.2d 13; Seaboard & Western Airlines v. Civil Aeronautics Board, 86 U.S.App.D.C. 9, 181 F.2d 777, 779.

The petitions to review are dismissed.