The **UTAH AGENCIES**, Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent,**
and
**Hughes Airwest, Intervenor.**

Nos. 73–1548, 74–1216.

United States Court of Appeals,
Tenth Circuit.

Oct. 21, 1974.

Robert S. Campbell, Jr., Sp. Asst. Atty. Gen. (Vernon B. Romney, Atty. Gen. of Utah, Jack L. Crellin and Roger F. Cutler, Attys., Salt Lake City, Utah, on the briefs), for petitioner.

Peter R. Steenland (Thomas J. Heye, Gen. Counsel, Civil Aeronautics Board; O. D. Ozment, Deputy Gen. Counsel, Civil Aeronautics Board, Glen M. Bendixsen, Associate Gen. Counsel, Civil Aeronautics Board, Joan Marie Frankel, Atty., Civil Aeronautics Board, Thomas E. Kauper, Asst. Atty. Gen., Carl C. Lawson and Arnold P. Lav, Attys., Dept. of Justice, on the brief), for respondent.

Richard A. Fitzgerald, Denver, Colo., for intervenor.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Pursuant to 49 U.S.C. § 1486 and Rule 15 of the Federal Rules of Appellate Procedure, the Utah Agencies has filed in this court two separate, though related, petitions for review of orders of the Civil Aeronautics Board. The Utah Agencies is an association comprised of the public and private sectors of the State of Utah, acting under formal articles of incorporation, and is specifically comprised of the following: The State of Utah, the Salt Lake City Corporation, the Greater Area Salt Lake Chamber of Commerce, and the Pro-Utah, Inc. The two petitions for review were consolidated for hearing in this court, as both relate to the same general subject matter, namely, nonstop air service between Salt Lake City and Los Angeles. The background facts relating to the two petitions for review will be developed separately.

*First Petition for Review*
*(Our No. 73–1548)*

Prior to 1968, Western Air Lines, Inc. was the only carrier authorized by the Board to provide air service between Salt Lake City and Los Angeles. In that year the Board awarded additional authority to Bonanza Air Lines, Inc., now Hughes Airwest, to provide competitive nonstop service between Salt Lake City and Los Angeles, and service between those points with an intermediate stop at Las Vegas.

In September of 1968, Airwest instituted service which included three daily nonstop round-trip flights between Salt Lake City and Los Angeles. In April of 1969, the level of Airwest's nonstop service was reduced to two daily nonstop round trips. In September of 1970, Airwest's level of service was further reduced to one daily nonstop round trip. Still later, Airwest reduced its nonstop service to one round trip per week and otherwise attempted to serve the market through two daily one-stop round trips via Las Vegas. On the other hand, Western was providing the Salt Lake City–Los Angeles market with eight nonstop flights and three one-stop flights southbound, and six nonstops and four one-stops northbound, all on a daily basis.

It was in this general setting that on October 2, 1972, the Agencies, pursuant to the provisions of 49 U.S.C. § 1371, filed a petition with the Board, requesting an investigation to determine whether new competitive nonstop service should be authorized between Salt Lake City and Los Angeles, either by revoking Airwest's authority and certificating a replacement carrier, or by certificating a third carrier to provide nonstop service between Salt Lake City and Los Angeles.

At the same time as the Agencies filed the aforesaid petition, the Agencies also filed that which was denominated as a Motion for Expedited Relief and for Exemption Authority, Pendente Lite. In this motion, the Agencies sought an expedited hearing on its petition, and

the immediate grant to some other carrier of temporary exemption authority so as to provide nonstop service between Salt Lake City and Los Angeles pending a decision in the certification proceeding. For reasons that will become apparent in a moment, we would emphasize here that the Agencies filed two documents with the Board, (1) a *petition* for an investigation, and (2) a *motion* for expedited hearing and interim relief.

Answers to the petition and the motion were filed by a number of carriers. Airwest opposed the Agencies' petition and motion. Western, in its answer, addressed itself primarily to the Agencies' criticism of Western's service. American Airlines, Inc. and United Air Lines, Inc., by separate answers, generally supported the Agencies' petition and motion, and each by separate application sought an award of certificate authority in the Salt Lake City–Los Angeles market and temporary exemption authority to serve that market pending final decision on the certification proceedings.

Based on the various pleadings then before it, the Board denied the Agencies' motion for an expedited hearing and interim relief, but left open, as we see it, for subsequent consideration the Agencies' petition for an investigation, such consideration to be taken up in the normal course of the Board's business, and not on an expedited basis. A copy of the Board's order denying an expedited hearing and interim relief is attached hereto as Appendix No. I. We commend a reading of the Board's order, as we do not propose to reiterate the same in this opinion.

The Agencies later filed a motion for reconsideration of this order, which motion the Board denied. In the first petition for review filed by the Agencies in this court, the Agencies seeks review of the Board's order denying an expedited hearing and interim relief.

*Second Petition for Review*
*(Our No. 74–1216)*

Shortly after the Board denied the Agencies' motion for reconsideration, as

above referred to, American Airlines, Inc. and Airwest filed with the Board on September 12, 1973, an application seeking approval under 49 U.S.C. § 1371(h) of a route exchange agreement between American and Airwest, pursuant to which, *inter alia,* Airwest's nonstop authority between Salt Lake City and Los Angeles would be transferred to American. Together with that application, American filed a new request under 49 U.S.C. § 1386(b) for temporary exemption authority to serve the market pending final decision on the route exchange agreement.

Answers to American's application for exemption pendente lite were filed by Airwest, the Agencies, Western and Trans World Airlines, Inc. In its answer Airwest supported American's request for temporary exemption authority. Airwest also indicated in its answer that it had previously planned to institute two daily nonstop flights between Salt Lake City and Los Angeles as of October 28, 1973, but that with the successful conclusion of the route exchange agreement with American, it had determined to forego such scheduling.

Western's answer opposed American's request for emergency authority, and asserted that American had failed to demonstrate any need for additional capacity on an interim basis; that the application failed to meet the criteria of 49 U.S.C. § 1386(b), particularly in the light of Kodiak Airways, Inc. v. C. A. B., 144 U.S.App.D.C. 371, 447 F.2d 341 (1971); and that the application raised controversial issues that could not be resolved without a hearing.

Trans World by its answer also opposed the grant of an emergency exemption on the grounds that it would have a pronounced impact on the overall route exchange agreement between American and Airwest.

On November 21, 1973, the Board denied American's application for exemption authority and the Board's order on this matter is attached hereto as Appendix No. II. Again we commend a read-

ing of that order, as we do not propose to repeat it in this opinion.

On December 26, 1973, the Agencies, but not American, petitioned the Board to reconsider its decision denying American's application for exemption authority. The motion for reconsideration was later denied; whereupon, the Agencies filed a second petition in this court for review of that particular order of the Board. So much for a general background statement of these two consolidated petitions for review.

■ We deem the scope of our review as concerns each of the petitions for review to be a narrow one. In No. 73–1548, we are only called upon to determine the propriety of the Board's order denying the Agencies' motion for an expedited hearing of its petition for an investigation looking towards the cancellation of Airwest's authority and the awarding of certificated authority to a substitute or new carrier, and its further order denying exemption authority on an interim basis. In No. 74–1216, we are called upon to review the propriety of the Board's order denying American's request that it be granted emergency authority on an interim basis because of American's route exchange agreement with Airwest. Our study of the matter leads us to conclude that based on the showing made by the Agencies and American, the Board did not abuse its discretion in denying the requests for an expedited hearing and interim relief.

We shall first consider the Board's refusal to give the Agencies an expedited and immediate hearing on its petition for institution of an investigation concerning Airwest's alleged abandonment of its authority and for the award of new or substituted authority. The Board is by statute vested with rather broad power to "conduct their proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice." 49 U.S.C. § 1481. As the Board noted in its order, "far more applications and other requests for relief are filed than can be processed at any given point in time." In setting its calendar and determining the priority in which its cases will be heard, the Board is guided by the policy statements and standards set forth in 14 C.F.R. 399.-60(a) and (b).

■ Certainly the general rule is that the Board has a rather wide discretion in setting its calendar and in determining the relative priority in which its cases will be heard. In line therewith we noted in Frontier Airlines, Inc. v. Civil Aeronautics Board, 349 F.2d 587 (10th Cir., 1965), that "it is for Board decision to determine the order of its docket in view of public need" and that "it is seldom indeed that a court should interfere with a matter of discretion so peculiarly with the expertise of a specialized administrative body." See also, City of San Antonio v. Civil Aeronautics Board, 126 U.S.App.D.C. 112, 374 F.2d 326 (1967), and Western Air Lines v. Civil Aeronautics Board, 184 F.2d 545 (9th Cir., 1950).

■■ The Agencies' argument as to why its petition for an investigation should be afforded priority runs somewhat as follows: by the 1968 award of authority to Airwest it has become the "law of the case" that there should be *competitive* nonstop air service between Salt Lake City and Los Angeles; that Airwest has abandoned its certificated authority for air service between Salt Lake City and Los Angeles; that accordingly, regardless of whether Western can itself satisfy the demand for nonstop air travel between Salt Lake City and Los Angeles, there is no longer *competitive* nonstop air service between these two points, and Western now has a de facto monopoly of the market; and that this lack of competitive nonstop air service has operated to the economic detriment of the Salt Lake City area. Assuming for the sake of argument the validity of this line of reasoning, such would not in our view require the Board to give the Agencies' petition preferential treatment by pushing it to the top of the Board's docket of cases. As we said in Frontier Airlines, Inc. v. Civil

Aeronautics Board, *supra,* the Board's decision as to the order in which its cases will be heard is a matter which is peculiarly within the discretion of the Board, and it is seldom, indeed, that a court should direct the Board to afford a given case priority over other pending matters. We find no abuse of discretion in the refusal of the Board to grant the Agencies an immediate or expedited hearing on its petition. A reading of the Board's order indicates that the Board's action was not arbitrary.

■ Similarly, we find no abuse of discretion on the part of the Board in denying the requests for emergency exemption under the provisions of 49 U.S. C. § 1386(b). The Board denied the requests for emergency exemption on the grounds that the statutory criteria contained therein had not been met. We agree.

■ The basic policy of the Federal Aviation Act is a certification system, "with exemption to be used sparingly," and the Congressional intent is that the "exemption power should be construed narrowly, and employed in only very limited and unusual circumstances." Island Airlines, Incorporated v. C. A. B., 363 F.2d 120 (9th Cir., 1966). Similarly, in Pan American World Airways v. Civil Aeronautics Board, 104 U.S.App. D.C. 288, 261 F.2d 754 (1958), cert. den. 359 U.S. 912, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959), it was held that before an exemption could be granted under 49 U.S. C. § 1386(b) from the certificate requirements of 49 U.S.C. § 1371, the Board must "find what the statute requires it to find," and absent such specific findings as fully comport with the statute, an exemption may not be granted. See also, in this regard, Kodiak Airways, Inc. v. C. A. B., *supra,* where in a factual situation bearing resemblance to the instant one, the Board was criticized for granting temporary exemption authority during the pendency of certification proceedings.

■ The Board's order in our view speaks for itself, and we find no error

in the Board's refusal to grant American exemption authority pending a final decision as to whether the route exchange agreement between American and Airwest should get Board approval. In this connection we were informed at oral argument that hearings on this proposed route exchange have been completed and that a decision is expected in the near future. Such may possibly resolve the entire controversy.

In this court the Agencies makes repeated reference to the fact that Airwest initially indicated that it would in the near future resume daily nonstop flights between Salt Lake City and Los Angeles and that it later reneged on that promise. Airwest explained its failure on the ground that the route exchange agreement which it subsequently entered into with American had materially changed the picture. Be that as it may, we do not believe that this factor dictates the granting of temporary exemption authority. It is but one factor, out of many, to be considered by the Board.

We believe that the Agencies may be laboring under some degree of misapprehension in its pursuit of these petitions for review. It would appear that the Agencies is of the view that the Board in its first order not only denied the Agencies' request for an expedited hearing and interim relief, but also dismissed its petition for the institution of proceedings looking towards the cancellation of Airwest's authority and the awarding of new or substituted certificates of authority. That is not our view of the matter. As we read the Board's order, it was only denying the Agencies' request for an expedited hearing and interim relief, and the Agencies' petition for institution of an investigation is accordingly still pending. And the Board itself is of the same view. So, the Agencies' petition should now be set for hearing. Such need not, as we have above indicated, be expedited, but should be heard in the normal course of Board

business. In setting the matter, any delay occasioned by the present review proceedings should not further delay Board consideration of the Agencies' petition.

Orders affirmed.

## APPENDIX NO. I

Order 73–3–28

### UNITED STATES OF AMERICA
### CIVIL AERONAUTICS BOARD
### WASHINGTON, D. C.

Adopted by the Civil Aeronautics Board
at its office in Washington, D. C.,
on the 9th day of March, 1973

| | |
|---|---|
| Petition of<br>**THE UTAH AGENCIES**<br>seeking the provision of new, substituted or additional certificated nonstop air transportation between Salt Lake City, Utah, and Los Angeles, California. | Docket 24795 |
| Applications of<br>**AMERICAN AIRLINES, INC.**<br>for a certificate of public convenience and necessity, and for an exemption. | Docket 24866<br>Docket 24867 |
| Applications of<br>**UNITED AIR LINES, INC.**<br>for amendment of its certificate of public convenience and necessity, and for an exemption. | Docket 24868<br>Docket 24913 |

---

### ORDER

On October 2, 1972, the Utah Agencies (Agencies)[1] filed a petition requesting new, substituted, or additional certificated nonstop authority between Salt Lake City and Los Angeles. Concurrently, the Agencies filed a motion for expedited relief through the issuance of a show cause order, an exemption and/or an expedited hearing.

In support of its petition the Agencies alleges, *inter alia*, that Hughes Airwest (Airwest), one of two carriers certificated to serve the Salt Lake City-Los Angeles market (Western Air Lines is the other), has reduced its service to one nonstop round trip per week[2] thereby

---

[1]. The Utah Agencies is comprised of various members of the private and public sectors of the State of Utah acting under formal Articles of Association.

[2]. The nonstop round trip is operated on Saturday. Airwest also serves the market with two daily one-stop round trips (except Saturday) via Las Vegas. (OAG, February 1, 1973).

creating a *de facto* monopoly for Western;[3] that the market is Salt Lake City's largest origin-destination market; that the Board found a need for competitive service in the *Salt Lake City-Las Vegas-Southern California Service Case*;[4] that Airwest is in violation of its certificate by failing to provide adequate nonstop service in the market; that Western's service is neither adequate nor convenient; that there is an urgent public need for additional service; and that a trunk carrier should be authorized to provide competitive service in the market.

A number of answers have been filed. Airwest opposes the Agencies' petition and motion; American Airlines and United Air Lines support the petition and motion; Frontier Airlines takes no position regarding the need for additional service in the market but asserts that an evidentiary hearing rather than a show cause or an exemption procedure is necessary in these circumstances; and Western takes no position with respect to the merits of the Agencies' petition and motion but takes exception to some of the contentions made concerning Western's present service.

The Agencies filed a consolidated reply to the answers of Airwest, Western, American and United, together with a motion for leave to file the otherwise unauthorized document.[5]

In addition to the foregoing pleadings, American and United have filed applications for certificates of public convenience and necessity [6] and for exemption authority [7] to provide nonstop Salt Lake City-Los Angeles service. Answers in opposition to the exemption applications were filed by Frontier, Western and Airwest, and American and United each answered in opposition to the other. Answers in support of each application were filed in the respective dockets by the Utah Agencies though no preference as between the two carriers was expressed.[8] Finally, American and United each filed a reply to those carriers which had answered in opposition to their respective applications.

Upon consideration of the pleadings and all the relevant facts, we have decided to deny the motion of the Utah Agencies for expedited relief in Docket 24795 and the applications of American in Docket 24867 and United in Docket 24913 for exemption authority.

The fact that far more applications and other requests for relief are filed than can be processed at any given point in time requires the Board to develop standards for determining which applications will be afforded a priority hearing. General standards for this purpose are set forth in section 399.60(b) of the Board's Policy Statements. In view of the facts discussed below, we have concluded that a new route proceeding to consider the need for additional unrestricted service in the Salt Lake City-Los Angeles market should not be instituted at this time.

Despite Airwest's virtual suspension of nonstop services, the market has continued to receive a relatively frequent and well-timed pattern of nonstop serv-

---

3. Western provides nineteen daily one-way frequencies in the market. (OAG, February 1, 1973).

4. Docket 17876, Order E–26871, June 4, 1968.

5. We will grant the motion.

6. American filed on October 26, 1972, in Docket 24866; United filed on October 27, 1972, in Docket 24868.

7. American filed on October 26, 1972, in Docket 24867; United filed on November 10, 1972, in Docket 24913.

8. The answer of the Utah Agencies to American's application in Docket 24867 was accompanied by a motion for leave to file the otherwise unauthorized document. We will grant the motion.

ices operated by Western.[9] There is no evidence of existing deficiencies in service sufficiently severe to require an immediate hearing to consider the need for additional nonstop authorization.[10] Moreover, in its answer to the petition and motion of the Utah Agencies, Airwest asserted that it will be in a position to provide daily nonstop service on April 29, 1973, and that it will certainly provide two or three daily nonstops by the fall of 1973. In the *Salt Lake City-Las Vegas-Southern California Service Case* we determined that competitive nonstop service in the Salt Lake City-Los Angeles market was desirable and that Bonanza Airlines—now Airwest— should provide it. We continue to hold the view that such service should be provided and that both Airwest and Western can achieve profitable results therefrom.[11] We, therefore, expect Airwest to honor its commitment at the earliest possible date.[12] In the interim Airwest's presence on the sidelines coupled with its promise to resume competitive nonstop service will provide a meaningful guarantee that Western will continue to offer a high level of service.

In view of the levels of service, schedules and load factors, and in reliance upon Airwest's promise to resume service, we conclude that there is an insufficient basis for according this application a priority hearing under the standards of section 399.60(b) of the Board's Policy Statements.[13]

ACCORDINGLY, IT IS ORDERED THAT:

1. The motion of the Utah Agencies for expedited relief through the issuance of a show cause order, an exemption and/or expedited hearing in Docket 24795 be and it hereby is denied;

2. The application for exemption of American Airlines, Inc., in Docket 24867 be and it hereby is denied;

3. The application for exemption of United Air Lines, Inc. in Docket 24913 be and it hereby is denied;

4. The motions of the Utah Agencies for leave to file otherwise unauthorized documents in Dockets 24795 and 24867 be and they hereby are granted;

5. This order shall be served on the Utah Agencies; Hughes Airwest; Western Air Lines, Inc.; American Airlines, Inc.; United Air Lines, Inc.; and Frontier Airlines, Inc.

By the Civil Aeronautics Board:

EDWIN Z. HOLLAND
Secretary

(SEAL)

9. Western provides seven daily nonstop flights southbound and five daily nonstop flights northbound. (OAG, February 1, 1973.)

10. Western's load factors averaged 60.5 percent in fiscal 1972. However, it must be emphasized that the average load factor was maintained at this level despite seasonal peaking at 68.5 percent and a strike which curtailed Airwest's service between December 14, 1971, and March 13, 1972, during which time Western's load factor averaged nearly 64 percent.

The load-factor data stated herein were compiled from service-segment data submitted by the carrier. Pursuant to Part 241, section 19–6, of the Economic Regulations, we find that release of the aforementioned data is consistent with the public interest.

11. We take no position at this time regarding the issue of whether Airwest in the past has been in violation of its certificate insofar as it provided only one weekly nonstop round trip in the market. It is clear, however, that Airwest could not be in violation of its new one-segment certificate (awarded in Order 72–9–58, September 14, 1972) in which Salt Lake City-Los Angeles nonstop authority is entirely permissive.

12. We are aware of the financial, managerial and labor problems which Airwest suffered in the years following its certification in the market in issue. We note, however, that this trend has been reversed in that Airwest experienced its first profitable quarter since early 1968 in the third quarter of 1972 (Source: CAB Form 41 Reports, Q/E September 30, 1972) and that it is in the process of taking delivery of twelve recently purchased DC–9 aircraft.

13. For reasons similar to those set forth above, we shall deny both the request of the Agencies for an order to show cause and the requests of the Agencies, American and United for exemption authority pending the outcome of certification proceedings.

APPENDIX NO. II

UNITED STATES OF AMERICA
CIVIL AERONAUTICS BOARD
WASHINGTON, D. C.

Adopted by the Civil Aeronautics Board
at its Office in Washington, D. C.
on the 21st day of November, 1973

Application of
 AMERICAN AIRLINES, INC.

for exemption under section 416(b) of the
Federal Aviation Act of 1958, as amended,
to provide nonstop air transportation service
between Salt Lake City, Utah, and Los
Angeles, California.

Docket 25882

## ORDER

On September 12, 1973, American Airlines and Hughes Air Corp. d/b/a Hughes Airwest (Airwest) filed an application seeking the Board's approval of a route exchange agreement which, among other provisions, contemplates the transfer to American of Airwest's Salt Lake City-Los Angeles nonstop authority. On the same date American filed an application requesting the Board to issue an exemption that would permit American to provide nonstop service in the Salt Lake City-Los Angeles market pending final decision on the American-Airwest route exchange agreement.

In support of its exemption application, American states, *inter alia,* that the Board found a need for competitive nonstop service in the Salt Lake City-Los Angeles market in the *Salt Lake City-Las Vegas-Southern California Service Case,* Order E–26871, June 4, 1968; that Airwest, the carrier certificated to provide that competition, does not now provide (and has not for a substantial period of time provided) that competition; that, despite the lack of competitive service by Airwest, the Board has repeatedly denied requests by United and American for exemption authority in the market, citing Order 73–3–28, dated March 9, 1973 and 73–7–49, dated July 12, 1973; that the most recent denial (in Order 73–7–49) was based solely upon reliance by the Board on the representation of Airwest that it intended to resume competitive nonstop service between Salt Lake City and Los Angeles in the autumn of 1973; that Airwest has not resumed such service and that it is now clear that Airwest will not do so; that, as a result, and despite the desire of the Utah Agencies and the conclusions of the Board, the instant market will continue to be without competitive nonstop service for an extended period; that American proposes to provide two nonstop round trips in the market beginning November 1, 1973; that American recognizes that issuance of the requested exemption can in no way be taken as an indication of Board approval of the American-Airwest exchange agreement; and that no other carrier will be adversely affected by the issuance of the requested exemption authority.

Answers in support of American's application have been filed by Airwest and the Utah Agencies. Airwest states that it has decided not to reenter the Salt Lake City-Los Angeles market with nonstop service because, due to the existence of its route exchange agreement with American, Airwest's management has determined that it would be wasteful to embark upon a program of development for the market.

Western Air Lines filed an answer in opposition to American's request for exemption authority, in which it states, *inter alia*, that there is no need for additional capacity in the market on an interim basis; that American's application has met neither the statutory requirements of section 416(b) of the Act nor the requirements of Kodiak Airways, Inc. v. C.A.B., 144 U.S.App.D.C. 371, 447 F.2d 341 (1971); and that American's application raises controversial issues which are too complex for resolution without a hearing. American filed a reply to Western's answer.

Upon consideration of the pleadings and all the relevant facts, we have decided to deny American's application for an exemption and to grant no alternative form of relief at this time.

American has failed to establish that its application meets the statutory criteria for the exercise of the Board's exemption powers—in particular, the carrier has failed to show that the enforcement of the Act would be an undue burden upon it by reason of the limited extent of or unusual circumstances affecting, its operations. Moreover, assuming Airwest's abandonment of its competitive role in the Salt Lake City-Los Angeles market, the question of what carrier if any should henceforth compete with Western in that market is too complex and controversial to be dealt with by non-hearing procedures. Nor is there any overriding urgency to support use of the Board's exemption powers to put another carrier in the market immediately. As noted in Order 73–3–28, the market up to that time had "continued to receive a relatively frequent and well-timed pattern of nonstop services operated by Western," and this service has subsequently been improved by the addition of a further nonstop flight in each direction six days a week, bringing the total of nonstop flights to eight daily southbound and six daily northbound.[1] These flights remain well-timed throughout the day and load factors have not been excessive.[2] Accordingly, a case for an immediate exemption has not been made out.[3]

In denying the Utah Agencies' motion for an expedited hearing in Order 73–3–28, we expressly relied on Airwest's representation that it intended to resume Salt Lake City-Los Angeles nonstop service either in April of this year, or at the latest in the autumn. In denying the Agencies' petition for reconsideration in Order 73–7–49, we again expressly relied on Airwest's promise to resume nonstop in the autumn, and said that if this promise was not fulfilled we would consider what remedial action might be appropriate in the public interest.

It now appears that Airwest has not fulfilled its earlier promise to resume

1. OAG, October 1, 1973. In addition, Western offers three daily one-stop southbound flights and four daily one-stop northbound flights.

2. Load factors averaged 60.5 percent in fiscal year 1972 and 62.3 percent in fiscal year 1973. These load-factor data were compiled from service-segment data submitted by the carrier. Pursuant to Part 241, Section 19–6, of the Economic Regulations, we find that release of the aforementioned data is consistent with the public interest.

3. Our preceding conclusions as to the present adequacy of Western's service relate solely to American's application for *pendente lite* exemption authority, and in no manner deal with the broader question of the desirability of competitive nonstop service in the Salt Lake City-Los Angeles market.

nonstop service, and has no present intention of doing so. This circumstance does not, in itself, satisfy the statutory prerequisites for granting American's request for exemption authority in the market, particularly in view of the *Kodiak Airways* decision, *supra*. But it does raise the issue of what other remedial action might be appropriate. Under normal circumstances, we might well be inclined to take such action, since we would not ordinarily consider Airwest's explanation—that it does not wish to resume service pending Board action on its route exchange agreement with American—to be adequate justification in view of its previous representations.

Circumstances, however, are far from normal. In view of the current national fuel allocation program, which has already impelled the Board to take a number of extraordinary actions looking to the reduction of excess airline schedules, we cannot contemplate taking any action which might require or encourage Airwest to provide additional schedules in a market which is already as well served, certainly, as a great many markets will in all likelihood be when the carriers have completed curtailment of their schedules to conform to their fuel allocations. Thus it is not Airwest's contentions but the supravening fuel emergency which convinces us that we should take no present action to require Airwest to resume nonstop service in this market or to consider substituting another carrier for Airwest at this time (except insofar as the latter question is at issue in the route exchange case).

ACCORDINGLY, IT IS ORDERED THAT:

The application of American Airlines, Inc., for an exemption be and it hereby is denied.

By the Civil Aeronautics Board:

EDWIN Z. HOLLAND
Secretary

(SEAL)