James B. ROMBOUGH, Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION, and Langhorne M. Bond, Administrator, Federal Aviation Administration, Respondents.

No. 19, Docket 78–4023.

United States Court of Appeals, Second Circuit.

Submitted Sept. 18, 1978.

Decided Feb. 14, 1979.

894

Michael H. Bader, Raymond C. Fay, and Haley, Bader & Potts, Washington, D. C., for petitioner.

Barbara Allen Babcock, Asst. Atty. Gen., Leonard Schaitman, Judith S. Feigin, Attys., Civ. Div., App. Section, Dept. of Justice, Washington, D. C. (Marshall Filler, Federal Aviation Administration, Washington, D. C., of counsel), for respondents.

Before MOORE, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

Petitioner James B. Rombough ("Rombough"), a former airline transport pilot, was retired upon reaching his sixtieth birthday under the so-called "Age 60 Rule",[1] 14

---

1. 14 C.F.R. § 121.383(c) (1977), which affects commercial airline pilots engaged in operations under Part 121 of the Federal Aviation Regulations, 14 C.F.R. §§ 121.1 et seq. (1977), provides:

"No certificate holder may use the services of any person as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday. No person may serve as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday."

C.F.R. § 121.383(c) (1977), promulgated by the Federal Aviation Administration ("FAA") in 1959. Prior to the date of his sixtieth birthday in December, 1975, Rombough was a pilot for American Airlines for thirty-three years. At the time of his retirement, he maintained current Captain qualifications on American's 707, 747 and DC-10 aircraft. In his more than forty years of aviation experience, he accumulated over 25,000 hours of flying time.

On December 21, 1977, Captain Rombough filed a petition for exemption from the Age 60 Rule[2] asserting that his physical condition warranted the granting of an exemption. At the same time Rombough also filed a motion to disqualify the Federal Air Surgeon, Dr. H. L. Reighard, from participating in the case on the grounds of bias.

From the FAA's denial of both his application for exemption and motion to disqualify, Rombough has filed the instant petition to review pursuant to § 1006(a) of the Federal Aviation Act of 1958, 49 U.S.C. § 1486(a) (1970). For reasons set forth below, we affirm.

## I.

■ The FAA's denial of an exemption from the Age 60 Rule is properly reviewable by this court. The FAA argues that the denial of an exemption falls under the provision of the Administrative Procedure Act which excludes from judicial review "agency action . . . committed to agency discretion by law". 5 U.S.C. § 701(a)(2) (1976). Section 601(c) of the Aviation Act, 49 U.S.C. § 1421(c) (1970) provides that:

"The Administrator from time to time may grant exemptions from the require-

ments of any rule or regulation prescribed under this subchapter if he finds that such action would be in the public interest."

Key to the FAA's argument that Congress intended that the exemption decision be left to the Administrator rather than the courts is the appearance of the word "may" in 49 U.S.C. § 1421(c). However, the Supreme Court has held that 5 U.S.C. § 701(a)(2) is a "very narrow exception" to the general principle of reviewability and applies only in those rare cases where " 'statutes are drawn in such broad terms that in a given case there is no law to apply' ". *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971), quoting S.Rep.No.752, 79th Cong., 1st Sess., at 26 (1945). Here, under 49 U.S.C. § 1421(c), the statutory standard is the public interest. In review proceedings arising under other provisions of the Aviation Act,[3] which also incorporate the term "may" and the public interest standard, courts have found agency action to be reviewable under 49 U.S.C. § 1486(a) and not subject to unbridled discretion. *See, e. g., REA Express, Inc. v. CAB,* 507 F.2d 42, 45 (2d Cir. 1974); *Utah Agencies v. CAB,* 504 F.2d 1232, 1237 (10th Cir. 1974). Similarly, the FAA's exemption decision in this case cannot be considered an action committed to the unlimited discretion of the agency and thus beyond the scope of judicial review.

■ Moreover, § 1006(a) of the Aviation Act, 49 U.S.C. § 1486(a), specifically provides that "[a]ny order" of the Administrator, "affirmative or negative", is subject to judicial review.[4] This specific review provi-

---

2. The petition was submitted pursuant to § 601(c) of the Aviation Act, 49 U.S.C. § 1421(c) (1970) and § 11.25 of the Federal Aviation Regulations, 14 C.F.R. § 11.25 (1977). Under the FAA Regulations, each petition for exemption must contain "any information, views or arguments available to the petitioner to support the action sought, the reasons why the granting of the request would be in the public interest and . . . the reason why the exemption would not adversely affect safety or the action to be taken by the petitioner [would] provide a level of safety equal to that

provided by the rule from which the exemption is sought".

3. 49 U.S.C. §§ 1381, 1386(b). The latter provision, like 49 U.S.C. § 1421(c), deals specifically with exemptions from rules promulgated under the Act.

4. The FAA does not argue that the denial of exemption here is not such an "order" under 49 U.S.C. § 1486(a). 49 U.S.C. § 1486(a) has been judicially restricted to review of final agency orders. *McManus v. CAB,* 286 F.2d 414, 417

sion must take precedence over the general provisions of the Administrative Procedure Act. Other circuits have sanctioned review of exemption determinations under this section. *See, e. g., Coppenbarger v. FAA*, 558 F.2d 836 (7th Cir. 1977) (as to procedural aspects); *Priority Air Dispatch v. National Transportation Safety Board*, 169 U.S.App. D.C. 94, 514 F.2d 1335 (1975) (upholding National Transportation Safety Board review of termination of an exemption under similar statute).[5]

## II.

Before turning to petitioner's substantive claims, we must first determine the appropriate standard of review. The judicial review provision of the Aviation Act contains a standard of "substantial evidence" for findings of fact made by the FAA. 49 U.S.C. § 1486(e). However, the nonfactual analysis and conclusions of the agency in a review proceeding under 49 U.S.C. § 1486 have been judged under an abuse of discretion standard. *See, e. g., Pillai v. CAB*, 158 U.S.App.D.C. 239, 485 F.2d 1018 (1973); *see also, Consolidated Flower Shipments v. CAB*, 213 F.2d 814 (9th Cir. 1954).[6] Recent-

ly, in reviewing an order of the CAB pursuant to 49 U.S.C. § 1486, the Ninth Circuit applied an arbitrary, capricious or an abuse of discretion standard of review. *Tiger International, Inc. v. CAB*, 554 F.2d 926, *cert. denied*, 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977). The. Ninth Circuit placed heavy emphasis on the decision in *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), in which the Supreme Court applied the arbitrary and capricious standard in a case where there had been no adjudicative hearing. *See also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–15, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Although review in *Camp v. Pitts* was pursuant to the Administrative Procedure Act, the Ninth Circuit felt that the Supreme Court's critical distinction between review of a hearing record and review in a case where no hearing was held applied with equal force to a case brought under 49 U.S.C. § 1486. The Ninth Circuit's recognition of the administrative and practical difficulties in applying a substantial evidence test to a petition for exemption is equally pertinent here.[7]

(2d Cir. 1961). A "final" agency order is one which imposes an obligation, denies a right, or fixes some legal relationship. *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 112–13, 68 S.Ct. 431, 92 L.Ed. 568 (1948). That test has been met here, and the FAA does not argue otherwise.

Also, finality is not affected by the fact that the order under review was issued by the Flight Standards Service instead of the FAA Administrator. 49 U.S.C. § 1344(d); 14 C.F.R. §§ 11.-41(a), 11.53(a); *see Coppenbarger v. FAA*, 558 F.2d 836, 838 n.3 (7th Cir. 1977).

5. *United States ex rel. Schonbrun v. Commanding Officer*, 403 F.2d 371 (2d Cir. 1968), *cert. denied*, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969), cited by the FAA, is not to the contrary. That case is based on the national security interest in foreclosing civil judicial review of denials of military hardship exemption applications. *See also Coppenbarger v. FAA*, 558 F.2d 836 (7th Cir. 1977). In that case, the court reviewed the FAA denial of an exemption from the federal regulations governing airmen medical certificates. However, the court specifically reserved the question of reviewability under 5 U.S.C. § 701(a)(2) because the petitioner was not challenging the merits of the Admin-

istrator's decision but the procedure he employed to reach that decision.

6. In *Pillai v. CAB, supra*, the court stated "To the extent that the Board's 'public interest' determination *involved factual predicates*, the substantive statute requires that they be supported by substantial evidence". 485 F.2d at 1023 (footnote omitted) (emphasis added). The court went on to distinguish the standard to be applied to the Board's analytic functions, stating:

"To the extent that a decision to avoid an open rate situation represented a combination of 'administrative prediction' and strategy in the face of essentially unprovable levels of risk, we must agree that this decision did constitute an exercise of agency discretion— the sort of determination for which this court should have the utmost deference in view of administrative expertise." *Id.* at 1027.

7. The Ninth Circuit noted:

"If we were to apply a substantial evidence standard to a case where no hearing was required or requested and where the bulk of the record consists of the petitioner's own documentation in support of its application, the [agency] would be placed in an extremely difficult position. It would in all such cases

■ Here the regulations specifically state that no hearing is to be held on a petition for an exemption. 14 C.F.R. § 11.27(a). Nor does petitioner have a constitutional right to a hearing before denial of an exemption. *Coppenbarger v. FAA,* 558 F.2d 836 (7th Cir. 1977). Thus, on the facts of this case, an arbitrary and capricious standard is appropriate.

### III.

In our review of the FAA's order, our role is not to determine Captain Rombough's fitness to fly. Nor are we to re-examine the validity of the Age 60 Rule or to review the evidence introduced before the FAA Administrator when he made the decision to keep the rule in force. However, the issue before us is somewhat broader than the denial of an exemption to a single individual on the merits. The FAA has adopted the position that, although the FAA Administrator has discretion to establish an exemption policy, the interests of safety would best be served by allowing *no* exemptions from the Age 60 Rule. The practical effect of this no-exemption policy is the rejection of all applications for exemption from the rule regardless of the showing made by an individual petitioner. We must determine whether in light of the congressional expectation that some exemptions will be granted, the FAA's policy of refusing to grant exemptions for an entire class of petitioners is an abuse of discretion.

■ We find that the FAA's denial of the exemption here was neither arbitrary nor capricious and uphold the FAA's policy of refusing to grant exemptions from the Age 60 Rule. The Age 60 Rule was promulgated in 1959 pursuant to the FAA's statutory authority to promote safety in air commerce.[8] This rule provided, as it does today, that no one who has reached age 60 may serve as a pilot on a commercial airplane.[9] Notice of proposed rulemaking was given and written comments were received but no formal evidentiary hearing was held. *See Air Line Pilots Association, International v. Quesada,* 276 F.2d 892, 895 (2d Cir. 1960), *cert. denied,* 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254 (1961).

The mandatory retirement age embodied in the rule reflected extensive study by the Administrator of the aging process and of the possible safety hazards inherent in utilizing airline pilots aged 60 or over. When the rule was issued, the Administrator cited studies indicating that "sudden incapacity due to . . . medical defects becomes significantly more frequent in any group reaching age 60" and the possibility of sudden incapacity "due primarily to heart attacks and strokes, cannot be predicted accurately as to any specific individual on the basis of presently available scientific tests and criteria." 24 Fed.Reg. 9767 (December 5, 1959). Thus, the Administrator determined that it was not feasible to attempt to individualize assessments of pilots' medical qualifications, without regard to chronolog-

find it necessary to order a hearing sua sponte or otherwise introduce into the administrative record a quantum of evidence contrary to the applicant's position sufficient to preserve the option of ruling against the applicant and of having that ruling sustained on appeal.", 554 F.2d at 936.

As a practical matter, application of a substantial evidence test to the exemption request in this case would present an enormous administrative burden. In 1977 alone, the FAA ruled on approximately 1000 exemption applications, using the same procedures applied in the instant case.

**8.** The Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 *et seq.,* vests the FAA Administrator with broad powers to foster air safety, including the power to prescribe "[r]easonable rules and regulations governing, in the interest of

safety, the maximum hours or periods of service of airmen, and other employees, of air carriers". 49 U.S.C. § 1421(a)(5). The Act also empowers the Administrator to issue "[s]uch reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedure, as the Administrator may find necessary to provide adequately for national security and safety in air commerce". 49 U.S.C. § 1421(a)(6).

**9.** *See* note 1, *supra.* The Age 60 Rule does not restrict a pilot from continuing to hold a pilot certificate or an FAA medical certificate, but rather acts as an operational limitation under Part 121 of the Federal Aviation Regulations, which pertains principally to commercial air carrier operations.

ical age. 24 Fed.Reg. 9768 (December 5, 1959).

The rule has survived a number of challenges on both procedural and substantive grounds. In 1960, this court held that the rule was a valid exercise of the Administrator's rulemaking authority and that affected parties had no constitutional or statutory right to an evidentiary hearing before it was issued. *Air Line Pilots Association, International v. Quesada*, 276 F.2d 892 (2d Cir. 1960), cert. denied, 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254 (1961).

In 1970 and 1971, the Air Line Pilots Association and a group of former pilots filed petitions with the FAA requesting revocation of the Age 60 Rule and a public evidentiary hearing. The FAA conducted informal hearings in October, 1971, and disposed of the groups' petitions in March 1972 on the following basis:

"In the opinion of the FAA, there continues to be a sound medical basis for retaining the age 60 rule. When the rule was adopted, a chronological determinant was selected in the absence of our ability to determine the physiological and psychological age of individual pilots, and that ability remains lacking today." [10]

The agency's actions in refusing to revoke the rule or to conduct an evidentiary hearing were subsequently upheld in *O'Donnell v. Shaffer*, 160 U.S.App.D.C. 266, 491 F.2d 59 (1974).

During confirmation hearings before the Senate in 1977, the FAA Administrator promised to make a personal review of the Age 60 Rule. The results of that review were communicated to various Senators in September, 1977. In part, the Administrator reported:

"I would favor replacing the age 60 rule with a system based on a psycho-physiological age index if I could be satisfied that a proven scientific basis exists and a feasible mechanism could be devised which could replace this rule while providing an equivalent level of safety. From my review of this matter, I am convinced that this capability has not yet been reached."

In addition, the International Civil Aviation Organization ("ICAO") recently reviewed the effects of aging on pilots and adopted the following Amendment 156 to Annex 1, effective January 26, 1978:

"2.1.7. CURTAILMENT OF PRIVILEGES OF PILOTS HAVING ATTAINED THEIR 60TH BIRTHDAY 2.1.-7. A contracting state, having issued a pilot's license, shall not permit the holder thereof to act as pilot-in-command of aircraft engaged in scheduled international air service or nonscheduled international air transport operations for remuneration or hire if the license holder has attained his sixtieth birthday."

Subsequent to the scheduled oral argument in the instant case, the Seventh Circuit upheld the FAA's denial of an exemption from the Age 60 Rule and found that the FAA's policy of refusing to grant exemptions from that rule was not an abuse of discretion. *Starr v. FAA*, 589 F.2d 307 (7th Cir. 1978).

Petitioner argues that the safety considerations which caused the FAA to institute an arbitrary age cutoff in 1959 have been satisfied in the instant case. To support his contention, Rombough relies upon (1) his consistent longitudinal medical history, (2) thorough contemporaneous cardiovascular testing, including maximal exercise testing using bicycle ergometry, and (3) the absence of relevant risk factors. In response, the FAA has argued that the testing is inadequate, that some relevant risk factors (including some yet unknown to medical science) were not taken into account, and that there is an extremely high incidence of false-negative results from stress EKG testing.

Petitioner relies primarily on the Eighth Circuit's decision in *Houghton v. McDonnell Douglas Corp.*, 553 F.2d 561 (8th Cir.), cert. denied, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977), to support the proposition that "functional age" can be measured and that petitioner's functional age quali-

---

10. Disposition of Petition in FAA Regulatory Docket No. 10358, issued March 23, 1972.

fies him for an exemption from the Age 60 Rule. However, that case does not establish that the tests submitted by Captain Rombough provide a level of safety equivalent to that under the Age 60 Rule. *Houghton* involved a suit under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., brought against a private employer by a 52-year old test pilot transferred from flight status. The private employer had no policy concerning the upper age limit for pilots, relying instead on "intuitive judgment". 553 F.2d at 563. When declining business necessitated a cutback in test pilots, the company transferred the oldest pilots first, one of whom was petitioner. The court found that the company's *ex post facto* rationalization on the basis of age was a *per se* violation of the Age Discrimination in Employment Act.

*Houghton* does not support petitioner's claim. Although the court found the safety record of the older pilots, within the sample studied, was better than that of the younger ones, due to their experience,[11] the court did not discuss the medical standards specified by petitioner and, in remanding the case, did not specify the standards to be considered by the district court in determining if Houghton was still medically qualified to perform the duties of his job. *Id.* at 565. At best, *Houghton* represents a private defendant's inability to show why it had not tried to evaluate its pilots individually when it sought to transfer some from flight duty.

Moreover, other courts faced with the issue have specifically found that psychological and physiological changes due to age cannot be tested with sufficient reliability to justify the safety risks involved in employing older applicants in jobs where their performance may jeopardize people's safety. *See Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976); *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859 (7th Cir. 1974), *cert. denied sub nom. Brennan v. Greyhound Lines, Inc.*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975) (upholding bus company's refusal to hire new drivers past age 35 because of the potential danger of accidents from driver error due to age).[12] Further, the Supreme Court upheld mandatory retirement of police officers at age 50 against an equal protection attack in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). In his dissent, Justice Marshall specifically contrasted that factual situation with that of a pilot forced to retire at age 60:

> "The only relevant studies . . . support the conclusion that airline pilots should be terminated at age 60 because after *that* age medical examinations lose their predictive ability." 427 U.S. at 326, n.6, 96 S.Ct. at 2573 n.6 (Marshall, J., dissenting) (emphasis in original).

The FAA's denial of the exemption here was neither arbitrary nor capricious. The Age 60 Rule and the FAA's policy of refusing to grant exemptions from that rule, reflect the agency's inability to make a functional age determination for individual pilots. Petitioner has failed to meet his burden of showing that the standards he proposes provide a level of safety equal to that provided by the general rule. Not only do diverse medical views exist with respect to the adequacy of present day medical technology, but also new information continues to surface on both sides of the ques-

---

11. In his briefs, petitioner placed heavy emphasis on the language in *Houghton* stating that "it was shown that medical technology can predict a disabling physical condition in a test pilot with virtually foolproof accuracy". *Houghton v. McDonnell Douglas Corp., supra*, 553 F.2d at 564. However, by an order of the court dated June 1, 1977, the foregoing language was specifically deleted from the opinion.

12. *See also Aaron v. Davis*, 414 F.Supp. 453, 462 (E.D.Ark.1976). In that case, the court ruled that firefighters could not be mandatorily retired at age 62 but specifically distinguished the job of firefighter from that of an airline transport pilot or bus driver:

> "The risk is far greater that a slight error in judgment, or a slight physical defect, in a person who is piloting a jetliner or driving a bus would produce 'magnified' tragic results than they would in the case of one participating in a joint effort to extinguish a fire."

tion. Given the FAA's statutory responsibility for air passenger safety and the difficulty presented by an argument that precludes *any* age limit, it cannot be said that it was error for it to deny the exemption. Such a technical, medical area is one particularly apt for judicial deference. *Graham v. National Transportation Safety Board*, 530 F.2d 317, 319–20 (8th Cir. 1976).

## IV.

 Finally, there was no error in the FAA's refusal to disqualify the Federal Air Surgeon, Dr. H. L. Reighard. Petitioner alleges that the proceeding below was tainted by the participation of Dr. Reighard, who should have been disqualified because of his bias and prejudgments on the question of exemptions from the Age 60 Rule and because of his predetermination of the present case. The record shows that exemption applications from Part 121 of the Federal Aviation regulations are handled by the Flight Standards Service, an entity separate from the office of the Federal Air Surgeon. *See* 14 C.F.R. § 11.53. Thus, it does not appear on the record that Dr. Reighard was actually involved in the consideration of the petition. At most, he warned petitioners and others of what the agency's position regarding such petitions had been.

It should be noted that in a number of reported cases, courts have forced chairmen or members of federal regulatory or adjudicatory agencies to step down when they have exhibited prejudgment or bias concerning matters before them. *E. g., Cinderella Career and Finishing Schools, Inc. v. FTC*, 138 U.S.App.D.C. 152, 158, 425 F.2d 583, 591 (1970) and cases there cited; *see Gilligan, Will & Co. v. SEC*, 267 F.2d 461, 468 (2d Cir.), *cert. denied*, 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959). Subsequent to the scheduled oral argument in this case, a United States District Judge enjoined the present Chairman of the Federal Trade Commission from participating in an important case because of his prejudgment of factual issues. *Association of National Advertisers v. FTC*, 460 F.Supp. 996 (D.D.C., 1978). However, it is not improper for members of regulatory commissions to form views about law and policy on the basis of their prior adjudications of similar issues which may influence them in deciding later cases. *FTC v. Cement Institute*, 333 U.S. 683, 702, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *Starr v. FAA*, 589 F.2d 307 (7th Cir., 1978). An agency's conclusions as to general principles of law do not require disqualification. *See FTC v. Cement Institute*, 333 U.S. 683, 700–03, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). Here, petitioner has not shown that the Federal Air Surgeon did not form his views in the course of performing his proper functions in connection with earlier controversies relating to the Age 60 Rule.

The decision of the FAA is accordingly affirmed.