CAPITOL AIRWAYS, INC.,
and
World Airways, Inc., Petitioners,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

Seaboard & Western Airlines, Inc.,
Intervenor.

No. 16000.

United States Court of Appeals
District of Columbia Circuit.

Argued April 6, 1961.

Decided May 25, 1961.

Mr. Jerrold Scoutt, Jr., Washington, D. C., with whom Mr. Coates Lear, Washington, D. C., was on the brief, for petitioners.

Mr. O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Board, with whom Messrs. John H. Wanner, Gen. Counsel, Civil Aeronautics Board, Morris Chertkov, Atty., Civil Aeronautics Board, W. Wallace Kirkpatrick and Richard A. Solomon, Attys., Dept. of Justice, were on the brief, for respondent.

Messrs. Louis M. Kaplan and Joel H. Fisher, Washington, D. C., entered appearances for intervenor.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a petition to review an order of the Civil Aeronautics Board. Petitioners are air carriers in the category known as "supplemental." Their operating authority is of limited character.[1] In 1953, the Board promulgated Part 294 of its Economic Regulations, 18 Fed.Reg. 3639, authorizing air carriers of all categories to perform certain classes of transport services for the military establishment, whether or not these services were included within their pre-existing operating authority. All classes of carriers thereupon competed for military business. Petitioners obtained a share of this business, under negotiated contracts with the military authorities.

Part 294 of the Economic Regulations, as originally issued, contained certain restrictions on the operations which air carriers could perform for the military. These restrictions were lifted in large part by Exemption Order E–14484 dated September 25, 1959, and Exemption Order E–15151 dated April 26, 1960. Both of these amendments to Part 294 contained the expiration date of September

---

1. Under their basic authority petitioners may make (1) unlimited charter flights in domestic and overseas air transportation of passengers and cargo; (2) ten individually-ticketed flights per month between any points in domestic or overseas air transportation; and (3) "ir- regular" and "infrequent" cargo flights in foreign air transportation. Cf. United Air Lines v. Civil Aeronautics Board, 108 U.S.App.D.C. 1, 278 F.2d 446, vacated, 1960, 364 U.S. 297, 81 S.Ct. 267, 5 L.Ed.2d 89.

30, 1960.[2] Taken together with the basic exemptions contained in Part 294, they were understood in the air transportation business to provide a "blanket military exemption."

On July 28, 1960, the Board issued a notice of proposed rule-making with the announced purpose of repealing Part 294, the basic exemption provision, and replacing it with the prior procedure of granting individual exemptions to particular carriers for particular items of military transportation. Opportunity was provided for interested persons to file comments. On August 22, 1960, about five weeks before the expiration date of the two temporary Exemption Orders, petitioners filed such comments, arguing for the retention of the blanket military exemption, and at the same time filed both a joint application for the renewal of the expiring exemptions and a motion for an evidentiary hearing on the application. Both the joint application and the motion were denied by Order E–15769, dated September 14, 1960, which is the subject of this petition for review. In refusing petitioners' request to renew the two expiring exemption orders, the Board stated:

"As indicated above, Orders E–14484 and E–15151 expire by their own terms on September 30, 1960. The Board has determined, as a matter of regulatory policy in light of changing conditions, that it is no longer desirable to issue blanket exemptions. It will therefore revert to the previous system of handling these matters on the basis of individual requests for exemptions. This determination is made without prejudice to the disposition of such future individual applications and, therefore, does not amount to a decision on the merits of any particular case.

"Upon consideration of the foregoing, the Board has concluded that the request for extension or renewal of these Orders or for evidentiary hearing thereon should be denied."

In this court, petitioners' chief contentions are (1) that the Board failed to give them an adjudicatory hearing on their application for renewal of the temporary exemptions, and (2) that the Board's order failed to make sufficient findings of fact. The first of these contentions is based on the theory that Part 294 of the Economic Regulations, as amended by the orders issued on September 25, 1959, and April 26, 1960, gave petitioners what amounted to a "license" to engage in operations for the military establishment, free from the conditions imposed in their original operating authority. Their argument proceeds upon the assumption that the Board could not suspend or modify these "license" privileges without an evidentiary hearing, of an adjudicatory nature. They contend that the same requirements apply where, as here, the Board fails to renew such privileges, and permits them to expire at the end of their predetermined periods of operation.

In support of these arguments petitioners cite such cases as American Air Transport, Inc. v. Civil Aeronautics Board, D.C.1951, 98 F.Supp. 660, affirmed, 91 U.S.App.D.C. 318, 201 F.2d 189, certificate dismissed, 1952, 344 U.S. 4, 73 S.Ct. 2, 97 L.Ed. 4; In re Carter, 89 U.S.App.D.C. 310, 192 F.2d 15, certiorari denied, 1951, 342 U.S. 862, 72 S.Ct. 89, 96 L.Ed. 648; and Standard Airlines v. Civil Aeronautics Board, 1949, 85 U.S. App.D.C. 29, 32, 177 F.2d 18, 21. These decisions, however, are not controlling here. Carter concerned refusal to renew the bondsman's license of a particular individual, for cause. We held that due process required that he be given an evidentiary hearing, with "revelation of all data upon which a decision is to be based." See 89 U.S.App.D.C. at page 312, 192 F.2d at page 17. Similarly, in

2. Part 294 bears no expiration date and is still in effect. On February 23, 1961, the Board issued a tentative decision to repeal Part 294, but that order is not in issue in this appeal.

Standard Airlines, there was particularized authority to Standard (in the form of a "Letter of Registration" [85 U.S. App.D.C. 29, 177 F.2d 19.]) to conduct a defined air carrier business. The Board sought to suspend this authority, charging "wilful violations" of the governing statute. We held that the Board must give a hearing appropriate to the situation, namely, one which would give Standard a reasonable opportunity to rebut the charges leveled at its conduct.

American Air Transport, again, was similar in that it involved an effort by the Board to separate the sheep from the goats: to let the Large Irregular Carriers which had obeyed the spirit and letter of the Board's regulations remain in business undisturbed, while limiting the operations of those which had violated the authority given them. This court remanded the case to the District Court to determine whether the Board had in fact changed the terms of existing licenses. The inference to be drawn is that if the Board proposed to discriminate between carriers in the same group, characterizing some as law abiders and some as law breakers, it would be required to afford an evidentiary hearing to those whose operating authority was to be suspended or revoked for cause.[3]

In contrast, in the present case the impact of the Board's decision is on an entire class, rather than on particular members of the class who are singled out as law violators or labeled for some reason as unfit or unworthy. Here, the Board has left all competitors in the field, but has redrawn the rules of the game. Some will be easily able to survive under these new rules: some will not. But there is no attempt to adjudicate the merits of individual firms: no attempt to say, for example, that these petitioners (or any other carriers, in fact) are "wilful violators" of the law while others are not.

■ True, situations of this sort are not readily subject to hard and fast rules. The line between rule-making and adjudication is sometimes not easy to draw. But we think the present case is one appropriate for rule-making.[4] Clearly, Congress could, if it desired, give all firms engaged in air transportation the broad privilege of doing business with the military establishment, free of all restrictions imposed by other provisions of law. Congress could equally, in our view, deny any such broad privilege. We think that Congress delegated to the Board the authority to make this type of choice under valid rules and regulations adopted pursuant to the Federal Aviation Act of 1958, 49 U.S.C.A. § 1301 et seq. This, we believe, is what the Board has done: it has made a valid choice, in a valid manner. Cf. United States v. Storer Broadcasting Co., 1956, 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081.

■■ Petitioners' second contention, that the Board's order lacked sufficient findings of fact, must also be rejected. The requirement for findings necessarily varies according to the nature of the proceeding, and the context and effect of the administrative action. See Alabama Great Southern R. Co. v. United States, 1951, 340 U.S. 216, 228, 71 S.Ct. 264, 95 L.Ed. 225. We think the requirement was met in this case.

For these reasons, the order of the Board will be

Affirmed.

---

3. Compare Great Lakes Airlines et al. v. Civil Aeronautics Board, 1961, —— U.S. App.D.C. ——, 294 F.2d 17, involving temporary and conditional authority of a nature rather more substantial than that given to petitioners here. We there said that the complaining carriers "did not have their licenses revoked as 'punishment' for past conduct; they were found unqualified * * * and their temporary licenses thereupon expired."

See also Standard Airlines, Inc. v. Civil Aeronautics Board, 1949, 85 U.S.App. D.C. 29, 177 F.2d 18; Cook Cleland Catalina Airways, Inc. v. Civil Aeronautics Board, 1952, 90 U.S.App.D.C. 220, 195 F.2d 206.

4. Petitioners concede that if rule-making was the proper procedure, they received all that they were entitled to under the law.