The **FLYING TIGER LINE, INC.,**
Plaintiff,

v.

**Alan S. BOYD et al., as individuals and as
members of the Civil Aeronautics
Board, Defendant.**

**Civ. A. No. 1757–64.**

United States District Court
District of Columbia.

Sept. 14, 1965.

Edwin J. Dryer, Washington, D. C., for plaintiff.

O. D. Ozment, Associate Gen. Counsel, Civil Aeronautics Board, and Robert J. Wieferich, Department of Justice, Washington, D. C., for defendants.

Warren E. Baker, Washington, D. C., for intervenor.

HOLTZOFF, District Judge.

The issue presented in this case is the validity of a regulation of the Civil Aeronautics Board that limits the off-route charter operations of cargo air carriers to a specified percentage of their revenue.

The Civil Aeronautics Board on September 18, 1964 adopted and promulgated Regulation 207.6(b) reading as follows:

"Effective January 1, 1965, an all-cargo carrier shall not during any calendar year perform off-route charters which in the aggregate, on a revenue plane-mile basis, exceed two percent of the base revenue plane-miles flown by it during the preceding calendar year: *Provided, however,* That an all-cargo carrier shall be permitted to perform off-route cargo charters within its area of operations without any limitation as to volume of service."

The manifest purpose of the rule was to bar air carriers from diverting too large a proportion of their facilities and activities to off-route charter flights and to prevent a possible deterioration of regular service for which the carriers received their certificates.

The plaintiff, an all-cargo air carrier, brought the present action against the members of the Civil Aeronautics Board for a declaratory judgment adjudicating that the regulation is invalid and for an injunction against its enforcement. A passenger air carrier was permitted to intervene. The defendants and the intervenor moved to dismiss the complaint, while the plaintiff moved for summary judgment. The matter is before the Court at this time on these motions.

The principal objection raised against the validity of the regulation is that it transcends the statutory authority of the Board. This contention is based on the following provision of the Civil Aeronautics Act, 49 U.S.C. § 1371(e) (6), 72 Stat. 754, 76 Stat. 143:

"Any air carrier, other than a supplemental air carrier, may perform charter trips or any other special service, without regard to the points named in its certificate, or the type of service provided therein, under regulations prescribed by the Board."

It is argued by able counsel for the plaintiff that under this provision every air carrier, other than supplemental air carriers, has unlimited power to operate charter trips or render any other special service, and that such activities may not be curtailed by any regulation of the Civil Aeronautics Board. It is urged that the phrase "under regulations pre-

scribed by the Board" does not comprise authority to proscribe or restrict any such operations. At first blush this reasoning has a superficial allure, especially if the statutory provision is wrenched out of its context and disconnected from other sections of the Act.

This contention is, however, foreclosed by a decision of the Court of Appeals for this Circuit in Flying Tiger Lines, Inc. v. Civil Aeronautics Board, 92 U.S.App. D.C. 260, 204 F.2d 404. In that case the Court rejected a similar argument and construed the statute as meaning merely that it lifts the limitations contained in the certificate of the airline respecting points between which service may be rendered. The Court of Appeals agreed with the position of counsel for the Board that the sentence in question must be read in connection with other provisions of the Act. The opinion of the Court continues, pp. 405–406:

"Thus read, says the Board, the last sentence merely lifts from charter and other special service the limitation respecting points as designated in the certificate. Thus, says the Board, the limitation contained in the certificate respecting the type of service to be rendered—i. e., whether passenger, freight, express or mail—remains unaffected by this last sentence of the paragraph.

"We agree with the latter view, the Board's view. It seems to us that this is a sensible reading of the statute. Tigers' construction would materially upset what seems to us to be a careful congressional plan. * * * Tigers' construction would permit carriers with a certificate specifying one type of service to perform by special arrangement any other type of service without either certificate or exemption order. We think Congress would not have disrupted the general basic plan of the statute by a single obscure and ambiguous sentence placed at the end of a long paragraph.

"We agree with the Board that, if every certificate automatically carried an unlimited special service provision, chaos in regulation would result. Under an interpretation of the statute which would confer unlimited special service authority on every certificated carrier, the Board would have to keep in mind, as it considered any application for a certificate for any type of service, that the carrier would thereby be entitled to be an unlimited competitor in the passenger charter business and in any other special service business."

At the time of the decision of the Court of Appeals, the statutory provision did not contain the words "or the type of service provided therein". This phrase was inserted by an amendment enacted on July 10, 1962, 76 Stat. 143. It is urged in behalf of the plaintiff that this modification of the statute should lead to a broader construction than that previously adopted. The Court disagrees. The purpose of the amendment was solely to extend the existing provision to all-cargo carriers, in order that as originally worded, it should not be confined to passenger or combination carriers. This purpose clearly appears from the report of the Conference Committee on the bill which included the proposed amendment, H.Rept. 1950, 87th Cong. 2d Sess., June 28, 1962; U.S.Code Congressional and Administrative News, Vol. 1, 87th Cong. 2d Sess. 1962, p. 1865.

This discussion ineluctably leads to the conclusion that the statute should be construed as not conferring unbridled authority on air lines to make unrestricted and uncontrolled charter trips or render any other special service, but that the Board by regulation may prescribe limitations and qualifications on such activities. Consequently in promulgating the regulation in question the Board did not exceed its statutory power.

The Board conducted a series of rule-making hearings previously to the adoption and promulgation of the regulation. The record of the testimony adduced at these hearings is voluminous and comprizes over 1600 pages. It is urged in behalf of the plaintiff, however,

that an adjudicatory rather than a rule-making proceeding should have been conducted and that in the absence of an adjudicatory proceeding, the regulation must be deemed invalid. It has been held, however, that if the impact of a ruling or decision of the Board affects an entire class, rather than particular members of a group, an adjudicatory proceeding is unnecessary and the rule-making process may be properly invoked, Capitol Airways, Inc., v. C. A. B., 110 U.S.App.D.C. 262, 292 F.2d 755, 758.

Plaintiff's counsel urges that the regulation in question deprives the plaintiff of vested rights and that, therefore, its promulgation was in effect an adjudication. This reasoning is, however, an argument in a circle. It is predicated upon the plaintiff's interpretation of the statute as conferring a vested, unlimited power on air lines to conduct charter flights and perform special services. As heretofore indicated, this assertion is erroneous, since no vested rights that may not be limited by the Board are in fact granted to the air lines by the provision under consideration.

■ It is next objected that the regulation is discriminatory. It is not claimed, however, that the regulation discriminates against the plaintiff, or as among individual carriers. The basis for this contention is that the effect of the regulation is to limit the activities of all-cargo carriers to a greater extent than those of carriers of other types. It hardly needs discussion beyond a mere mention that reasonable classification does not constitute illegal discrimination.

■ The final contention advanced in behalf of the plaintiff is that the record of the hearings before the Board does not sustain the validity of the regulation or the need therefor. This contention seems to be based on a misconception of the nature of a rule-making proceeding. Rule-making is a legislative process. It is neither judicial, administrative, nor quasi-judicial. An agency performing a legislative function need not proceed on evidence formally present-

ed at hearings. It may act on the basis of data contained in its own files, on information informally gained by members of the body, on its own expertise, or on its own views or opinions. It is not necessary for the regulatory agency to cause to be submitted at hearings evidence that would support its rule-making decisions. The regulation ultimately promulgated need not be sustained by evidence. The purposes of rule-making hearings are to give an opportunity to interested parties to submit data and facts, and to present their views. Consequently, the Court does not review a record of such hearings as it does records in judicial or quasi-judicial proceedings. Such hearings are analogous to hearings conducted by Congressional Committees. An Act of Congress need not be supported by formal evidence introduced at hearings.

■ Much of the argument adduced by counsel for the plaintiff is directed to an effort to demonstrate that the rule is inexpedient, undesirable, or unfair. Such matters, however, are not for the Court to determine. The Court may not substitute itself for the Board and may not use its own judgment as to the desirability of the rule. The Court is restricted to determining whether the Board exceeded the limitations on its authority and whether there is any taint of illegality in its action.

It cannot be successfully claimed that there is anything arbitrary or capricious about the regulation, even if such an issue were cognizable by the Court, which is highly doubtful. The manifest objective of the regulation is entirely proper. Some mathematical formula had to be contrived in order to effectuate its aim. The Board used its best judgment in devising one.

In view of the foregoing considerations, the Court concludes that the challenged regulation is valid in law, and that there is no basis for setting it aside.

Motions of defendants and intervenor to dismiss the complaint are granted. Plaintiff's motion for summary judgment is denied.