**PRIORITY AIR DISPATCH, INC., Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD and Alexander P. Butterfield, Administrator of the Federal Aviation Administration, Respondents.**

No. 73–2169.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 25, 1974.

Decided June 19, 1975.

James D. Hill, Washington, D. C., with whom Stewart R. Carter, Jr., Washington, D. C., was on the brief, for petitioner.

Eloise E. Davies, Atty., U. S. Dept. of Justice, with whom Carla A. Hills, Asst. Atty. Gen., and Robert E. Kopp, Atty., Dept. of Justice, were on the brief, for respondents.

Before BAZELON, Chief Judge, DANAHER, Senior Circuit Judge, and WILLIAM WAYNE JUSTICE,[*] United States District Judge for the Eastern District of Texas.

Opinion for the Court filed by District Judge JUSTICE.

Opinion filed by Senior Circuit Judge DANAHER, concurring and dissenting.

JUSTICE, District Judge.

In its petition for review, Priority Air Dispatch, the petitioner, challenges certain rulings of the National Transportation Safety Board.

Before August 3, 1973, Priority, an air taxi operator, was engaged in the business of transporting hazardous materials for various government agencies. Priority began the conduct of this business in 1967, when the Federal Aviation Agency granted it, simultaneously, an Air Taxi/Commercial Operator's (ATCO) Certificate under section 604 of the Federal Aviation Act[1] and an exemption that permitted it to vary from certain FAA regulations related to the transportation of hazardous materials.[2] Substantially all of Priority's business apparently was carried on by grace of the exemp-

---

[*] Sitting by designation pursuant to Title 28 U.S. Code Section 292(d).

[1] 49 U.S.C. § 1424 (1970).

[2] The regulations are found at 14 C.F.R. §§ 103.3, 103.9(a), 103.11, 103.31(b). The exemption was granted pursuant to section 601(c) of the Federal Aviation Act, 49 U.S.C. § 1421(c) (1970).

tion, although it theoretically could have engaged in other activities permitted the holders of ATCO certificates, on the sole authority of the certificate. Accordingly, it was a serious blow to Priority's status when, on August 3, 1973, the FAA terminated Priority's exemption, effective immediately. Priority had been notified that this action was contemplated, and had been offered the opportunity to present its views, together with any data that it wished to submit, in writing. It was not, however, afforded any type of adversary hearing before the FAA's action; in particular, the FAA did not hold a proceeding of the description set out in sections 7 and 8 of the Administrative Procedure Act.[3] The FAA's order revoking the exemption alleged that Priority had been guilty of "violations of the terms and conditions of the exemption, violations of the Federal Aviation Regulations, and other incidents of questionable operating practice". On the same day, August 3, 1973, the FAA entered an order revoking Priority's ATCO certificate.

Priority, believing that it was entitled to notice and hearing before its twin grants of authority to operate its business were revoked pursuant to these charges of misconduct, proceeded to contest the FAA's actions on two fronts. First, on August 4, 1973, it filed a complaint in United States District Court, setting forth the events above described and demanding a temporary restraining order to prevent the FAA from enforcing its revocation order, pending a hearing on its motion for a preliminary injunction. The district court granted the temporary restraining order.[4] Second, Priority appealed the FAA's actions to the National Transportation Safety Board, the respondent.

The NTSB has authority, pursuant to the Department of Transportation Act of 1966, to review "the suspension, modification, revocation, or denial of any *certificate or license* issued by the Secretary [of Transportation] or an Administrator [of the Federal Highway Administration, Federal Railroad Administration, or FAA]".[5] (Italics added.) With the action in district court we are not concerned, except to note that the district court merged the temporary restraining order into a preliminary injunction on August 14, 1973, pending final hearing.

In Priority's appeal before the National Transportation Safety Board, the Administrator of the FAA filed a motion to dismiss, asserting that the NTSB had no jurisdiction over Priority's appeal from the revocation of its exemption and ATCO certification. In this connection, the Administrator argued that the FAA's action had been of a "special rulemaking" nature, and hence no appeal to the NTSB was authorized under the applicable statutes. An Administrative Law Judge of the NTSB denied the motion to dismiss. The five-man Board, however, reversed his decision with respect to the appeal from the revocation of the *exemption,* holding that it was not a "certificate or license", as described by the Department of Transportation Act.

Priority has applied to this court for relief from the NTSB's decision, pursuant to statutes granting this court jurisdiction to consider petitions for review of the actions of the NTSB.[6] Our sole concern here is the correctness of the decision of the NTSB that it lacked jurisdiction over Priority's appeal from the FAA's revocation of its exemption. The cancellation of the ATCO certificate is not at issue before us.

After a survey of the history of the 1966 Act and its predecessors, as well as the practices of the NTSB in the past, it is our view that the Board's statutory

---

**3.** 5 U.S.C. § 551 et seq.

**4.** Priority Air Dispatch, Inc. v. Brinegar, Civil Action No. 1573–73 (D.D.C. August 4, 1973).

**5.** Section 5(b)(2), Department of Transportation Act of 1966, 49 U.S.C. § 1654(b)(2) (1970).

**6.** Sections 609 and 1006, Federal Aviation Act, 49 U.S.C. §§ 1429, 1486 (1970); Section 4(c), Department of Transportation Act of 1966, 49 U.S.C. § 1653(c).

authority extends to the FAA's revocation of an airline's exemption from regulations, if the exemption in question is an essential component of the operating authority of the airline. The legislative history of the language found in the 1966 Act pertaining to "certificate or license" is murky. Prior to the creation of the National Transportation Safety Board, the Act assigned the review function to the Civil Aeronautics Board.[7] The statute vesting review powers in the CAB provided that the Board could review actions relating to "any type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility certificate, or air agency certificate."[8] The Department of Transportation Act of 1966 created the NTSB and transferred to the new agency the review responsibilities formerly exercised by the CAB. It is noted that the 1966 Act used more general language ("certificate or license") in describing the subjects of the Board's review authority[9] than was employed in the Act setting out the review powers of the CAB.

The NTSB has taken the position that it was the Congressional intent that the 1966 Act transfer to the NTSB only such aviation-related functions as were formerly exercised by the CAB, neither enlarging nor expanding them. In explaining the inclusion of the term "licenses" in the 1966 Act, the NTSB argues that in addition to the functions previously assigned to the CAB, the NTSB took on the former duties of the Coast Guard in "licensing" vessels and their crews. We accept this explanation. It appears, however, that even before 1966, the FAA and the CAB treated certain privileges not formally denominated as "certificates" in the same manner that they treated actual certificates. Thus, the regulations formulated by the FAA Administrator pursuant to Title VI of the Federal Aviation Act (which only authorizes the FAA to issue various types of "certificates") make provision for the issuance of such documents as "instrument ratings",[10] "type ratings",[11] "aircraft category ratings",[12] "airplane class ratings",[13] "rotorcraft class ratings",[14] "air traffic control facility ratings",[15] "mechanic ratings",[16] and "inspection authorizations".[17] Moreover, prior to 1966, the CAB routinely took jurisdiction over appeals from the revocation or suspension of such privileges.[18]

In Administrator v. Rawdon,[19] decided by the CAB in 1960, it was held that a mechanic's "inspection authorization" was the equivalent of a "certificate" under the statute conferring review authority on the CAB. Overruling its own hearing examiner, the full Board explained that an "inspection authorization" is "related to a mechanic's certificate"; that the CAB, therefore, had review jurisdiction over its revocation.[20] In so ruling, the CAB implicitly rejected the hearing examiner's reasoning that the "inspection authorization" cannot be a "certificate", because it is evidenced by a document separate from the holder's airman certificate.

Decisions of the National Transportation Safety Board since the 1966 Act accept without question the NTSB's jurisdiction over revocations of "ratings" and "authorizations" originally issued by the

---

7. Section 609, Civil Aeronautics Act of 1938, 52 Stat. 1008–1011.

8. *Id.*

9. 49 U.S.C. § 1654(b)(2).

10. 49 C.F.R. § 61.5(b)(6).

11. 49 C.F.R. § 61.5(b)(5).

12. 49 C.F.R. § 61.5(b)(1).

13. 49 C.F.R. § 61.5(b)(2).

14. 49 C.F.R. § 61.5(b)(3).

15. 49 C.F.R. §§ 65.31(b), 65.39, 65.41, 65.43.

16. 49 C.F.R. §§ 65.71, 65.73, 65.85, 65.87.

17. 49 C.F.R. § 65.91.

18. *See, e. g.,* Administrator v. Saupp, 45 C.A.B. 989 (1966); Administrator v. Proud, 42 C.A.B. 1014 (1965); Administrator v. Light, 40 C.A.B. 1008 (1964); Administrator v. Jones and Scott, 38 C.A.B. 1223 (1963).

19. 31 C.A.B. 1167 (1960).

20. *Id.* at 1168.

FAA Administrator.[21] Although none of the decisions articulate a reason for the Board's assumption of jurisdiction, logic suggests the same reason that recommended itself to the CAB in its 1960 decision: "ratings" and "authorizations" are inextricably entwined with the "certificates" of their holders and together with these certificates afford a variety of privileges that would be altered by revocation of the rating or authorization. It is manifest that a certificate would not be worthless without an associated "rating" or "authorization". Neither would Priority's ATCO certificate be valueless in the absence of its "related" exemption from certain regulations. But the FAA Administrator's revocation of the exemption had the effect of altering Priority's operating authority, and both history and reason dictate that the NTSB has statutory jurisdiction to review his decision. In so doing, the NTSB will of course be guided by the provisions of the Administrative Procedure Act, as well as by its own statutory procedures.

Reversed and remanded, with directions.

DANAHER, Senior Circuit Judge (concurring and dissenting):

I had sought earlier to convince my colleagues that our disposition of this case should be predicated upon the grounds I will spell out. More than once

we have refused to disturb the agency's rulings concerning the discretionary denial of an *exemption*. Viewed *solely* from that standpoint the action of the National Transportation Safety Board in refusing jurisdiction would have to be sustained. We surely do not mean to open the door to review agency action involving the thousands of exemptions annually granted or denied. As our court has ruled and as the Ninth Circuit has recognized:

> We believe it is clearly established that in an exemption proceeding, as compared to a certificate proceeding, a hearing is not always required. (Citations omitted.) Island Airlines, Incorporated v. C.A.B., 363 F.2d 120, 124 (CA9, 1966).

But, just as circumstances so often alter cases, the exercise of review authority by the Board should follow where there has been aggrievement stemming from the termination of an exemption which is an integral part of a carrier's operating authority. That is what happened here, as I will demonstrate.

Priority Air Dispatch, Inc., herein Priority, has brought to us its petition for review of an order of the National Transportation Safety Board, herein the Board, which had concluded that the Board lacks jurisdiction "to review—i. e. —to hold a hearing and adjudicate—an appeal from the termination of [Priority's] exemption."[1] Accordingly, the

---

21. *See, e. g.,* Administrator v. Jackson, 1 N.T.S.B. 2027 (1972) (instrument rating); Administrator v. Stroupe, 1 N.T.S.B. 1708 (1972) (powerplant rating); Administrator v. Phipps, 1 N.T.S.B. 1614 (1972) (airline transport pilot rating); Administrator v. Roche, 1 N.T.S.B. 1140 (1971) (inspection authorization); Administrator v. Terwilliger, 1 N.T.S.B. 1096 (1971) (B–727 type rating); Administrator v. Harrington, 1 N.T.S.B. 1042 (1971) (D.C.–8 type rating).

In Administrator v. Kline, 1 N.T.S.B. 1591 (1972), the Board discussed the suspension of a pilot's airline transport pilot rating, referring to it as "airline transport pilot privileges". The decision of the Administrative Law Judge had referred to the suspended item as a "license". Obviously, the NTSB has not al-

ways harbored its present concern with semantics.

1. The Flights Standards Service in February, 1973, had granted that exemption, finding that Priority's services were in the national interest and that the Army had recommended renewal of the exemption as in previous years. Yet six months later, FAA terminated the exemption and ruled that the hearing requested by Priority was neither "necessary or appropriate."

Later before the court and again before the Administrative Law Judge, Priority reiterated its claim of entitlement to a hearing, e. g.:

> The Agency has never specified the grounds for the revocation of the exemption, and we do not know whether they are the same as the grounds for the revocation of the certificate, or not, except that the Order of the

Board ordered that Priority's administrative appeal from that termination be dismissed, thus reversing the decision of an administrative law judge who had ruled otherwise under circumstances hereinafter developed. In light of the unique record here presented, I would reverse and remand with directions hereinafter stated, even as I concur in part.

Priority in 1967 became and continuously thereafter was the holder of an air taxi/commercial operator *certificate* (ATCO) and of an *exemption* which allowed Priority to transport hazardous materials for the Department of Defense. As of August 3, 1973 the operator certificate was revoked and the exemption was terminated. Unless reversed administratively or stayed by court order, those two official actions would effectively put Priority out of business.

Priority thereupon initiated administrative review proceedings having sought in vain a specification of charges and a hearing thereon. Priority also proceeded in the District Court where, after a hearing, District Judge Parker granted a preliminary injunction [2] restraining the Government defendants, *pendente lite,* from attempting to enforce the "Termination of Exemption" and "Emergency Order of Revocation."

### I

The Board assigned Docket No. 2290 to the Termination phase and Docket No. 2291 to the sought-for review of the Revocation of Priority's operator certifi-

cate. Resisting the effort of the Administrative Law Judge to proceed first with No. 2291, counsel for the Administrator pressed a motion to dismiss in No. 2290. He contended that Section 609 of the Federal Aviation Act of 1958, 49 U.S.C. § 1429, made no mention of authority for Board review of the termination of an exemption although the statute clearly conferred authorization for review of the Administrator's revocation of the operator certificate.

The General Counsel, granting that the challenged actions of the FAA had been taken "simultaneously", nevertheless argued that the FAA Termination constituted merely an exercise of unreviewable "rule-making."

Unimpressed, the Administrative Law Judge correctly observed:

> From what has been said in argument, it appears that the loss of the exemption would just as effectively terminate the respondent's business as would the loss of the operating certificate, Counsel having said, as I recall, that his business consists solely of the kind of business permissible under the exemption. It would seem that the imposition of a sanction under the guise of rule-making is a clear lack of due process.

The administrative law judge had become fully aware of the claims of the parties and recognized that the operating certificate and the exemption had been so coupled as to comprise Priority's *operating authority.* His Order reflects his judgment that Priority was entitled to a hearing.[3] He noted:

Agency terminating the exemption says that it is based in part on some allegations that were contained in a civil penalty letter, and some of those allegations are also in the Complaint for emergency revocation of the certificate.

2. It is clear enough that the district judge regarded the two Revocation and Termination actions as inextricably intertwined, indeed as one of his conclusions of law, he recited that Priority would suffer immediate and irreparable injury to its business if the Government defendants were not to be restrained from "at-

tempting to enforce their Order of Termination of Exemption and the emergency portion of their Emergency Order of Revocation, both dated August 3, 1973."

3. Undoubtedly the administrative law judge took into account Priority's claim that Section 2(e) of the Administrative Procedure Act, 5 U.S.C. § 551 et seq., defined the term "license" as ". . . including the whole, or any part of any Agency permit . . . any Agency permit or other form of permission". App. p. 72.

It would seem that all of the charges could have been made part of the Order of Revocation issued, (sic) so that they could all be subject to hearing procedure, and give the full appearance of fair play so essential, not only in Court proceedings, but in Administrative proceedings.

As the General Counsel had insisted that his attack based on jurisdictional grounds must receive priority consideration, the administrative law judge allowed an interlocutory appeal. to the Board after denying the Administrator's motion to dismiss.

## II

So it was that the Administrator's appeal in Docket No. SE–2290 reached the Board which specified in its Opinion and Order that "The sole issue presented herein is whether the Board has jurisdiction of [Priority's] appeal from the termination of exemption".[4] Having thus limited the scope of its inquiry, the Board chose to disregard other aspects in the substantial background of record before the administrative law judge, and the material in opposition to the Administrator's motion to dismiss. The Board in its opinion concluded that "termination of the exemption by the FAA was not tantamount to an order revoking a certificate within the meaning of section 609 of the Act." The Board thus rejected the view of the administrative law judge and Priority's claim that the ATCO certificate and the Flight Standards Service exemption, *taken together*, comprised Priority's operating authority.

How the Board could disregard the background and the record of Priority's operation is not readily understandable. The Flight Standards Service as late as February 28, 1973, had granted Exemption No. 700F in continuation of similar grants over a period of nearly six years. FSS specifically had ruled that the reasons for the grant of such exemptions

were still in existence: namely, that Priority's services were in the national interest and that the continuing authority to carry dangerous articles in a manner responsive to United States agency needs was in the public interest. In short, the 1973 extension of Priority's exemption stemmed from the recommendation of the Director of the Operations Division of the Military Traffic Management and Terminal Service of the Department of the Army.

Over the years Priority was the first carrier among some twelve air taxi operators to have been engaged in the transportation of dangerous articles for the Department of Defense. Since 1967, Priority had flown approximately 14,000,000 miles, had transported over 10,000 shipments of hazardous and sensitive items and had never incurred a lost or damaged shipment. Priority as of 1973 was transporting approximately 80 per cent of the hazardous freight offered by the Government to be serviced by carriers in its category.

I find myself at a loss to understand how Priority's authority so to operate was derived merely from its exemption and not from its certificate—but that is what the Board held.

Mere possession of ATCO status without authorization to transport explosives was not enough for Priority to continue in business. The exemption by itself availed nothing. The conjunction of both constituted Priority's operating authority. The very order granting the instant exemption recited:

> No person may operate an aircraft under this exemption unless he holds an ATCO operating certificate and operations specifications issued under Part 135 of the Federal Aviation Regulations.

Yet we find the Board insisting here that it lacked jurisdiction since 49 U.S.C. § 1429 makes no mention of authority to review the termination of an *exemption*.

---

4. "The appeal from the order of revocation, over which the Board's jurisdiction is undisputed, is currently awaiting a hearing before the administrative law judge", the Board's Opinion noted as to Docket SE–2291.

The Board seems to have failed to consider our case law as in comparable situations where an agency has sought to limit review of its actions.[5]

## III

Our discussion presently may be concluded. What we see here is a speciality, a going business representing substantial skill and large investment, suddenly terminated when the FAA cancelled its operating authority. As our analysis has disclosed, particularly with our precedents in mind, Priority's efforts to secure a notice of charges and a hearing on those charges have encountered agency barriers—largely artificial it may seem, in light of the facts.

We need not engage in a war of semantics concerning the precise nature of a letter of registration, a certificate, a license, an exemption or other label for agency permission under circumstances such as this record presents. We perceive here an operation, the scope of which—from Priority's inception—was known to and authorized by the agency, and undertaken at the instigation of the Government. Nor are we here concerned with a distinction between a "termination" and the grant or denial of an exemption as those terms appear in 14 C.F.R. Section 11.53. It could be conceded that in most situations the grant or denial of an exemption, without more, being discretionary, is not reviewable.

There is nothing absolute about such a declaration, however, as we have heretofore realized.[6]

Our inquiry is broader. Consideration must be given to practical aspects in the application of governmental power, for the facts depict the necessities, whether for the exercise of power or for the restraint upon it. So reasoned Judge Prettyman as he developed the principle, applicable now, just as we have recognized in some other situations. His discussion, *generally*, is helpful here, just as he pointed out

The controlling practicality, in our view, is that the suspension would destroy property, not a licensed property but investment and business property. The Government cannot make a business dependent upon a permit and make an otherwise unconstitutional requirement a condition of the permit . . . .[7]

Ever present in these situations is the concept of due process [8] whether the problem be of constitutional dimension or not. We all are well aware that from time to time issues have been presented to the courts where agencies in disregard of established criteria have exerted power, and then deemed their actions insulated from judicial review. One well might liken the termination of Priority's business to the "debarment" analyzed by our former colleague, Judge Burger, in

---

**5.** *See* notes 6, 7, 9 and 10, *infra.* Moreover the Board's Opinion reveals no recognition of the concern of the administrative law judge that the definition of "license" in Section 2(e) of the Administrative Procedure Act, 5 U.S.C. § 551(8) and (9), may comprehend "any Agency permit" or "other form of permission." *See* n.3, *supra.*

**6.** *See* Cook Cleland Catalina Airways v. Civil Aeronautics Bd., 90 U.S.App.D.C. 220, 221, 195 F.2d 206, 207 (1952). There the petitioner had applied for an individual exemption, but that application was denied without a hearing. When we affirmed the orders of the Civil Aeronautics Board, we pointed out:

In the present case no hearing was required by the Constitution, as no existing business and no existing property was involved. *We do not have here any question which might arise if the applicant had developed a business or acquired property by reason of the original registration or the original permissive regulations of the Board.* (Emphasis added).

**7.** Standard Airlines v. Civil Aeronautics Board, 85 U.S.App.D.C. 29, 31, 177 F.2d 18, 20 (1949).

**8.** Fundamentally, after all, we are talking about the right to be heard, having in mind such procedural protections as a particular situation may demand. *Cf.* the Court's illustrations in Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *See also* Board of Regents v. Roth, 408 U.S. 564, 570–572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Gonzalez v. Freeman,[9] 118 U.S.App.D.C. 180, 184, 185, 334 F.2d 570, 574, 575 (1964). There, 334 F.2d at 578, he wrote:

Such debarment cannot be left to administrative improvisation on a case-by-case basis. The governmental power must be exercised in accordance with accepted basic legal norms. Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made. (Footnote references omitted.)

Let me revert to the text, *supra,* where the administrative law judge had summed up the situation, observing that "the loss of the exemption would just as effectively terminate [Priority's] business as would the loss of the operating certificate." We have considered such situations in the past. In Capitol Airways, Inc. v. Civil Aeronautics Board,[10] Judge Washington put it this way:

The inference to be drawn is that if the Board proposed to discriminate between carriers in the same group, characterizing some as law abiders and some as law breakers, it would be required *to afford an evidentiary hearing to those whose operating authority was to be suspended or revoked for cause.* (Emphasis added.)

Under the circumstances, I would conclude that the National Transportation Safety Board's order now before us was entered under a misapprehension as to governing law. Our petitioner, Priority, was entitled to an adjudicatory hearing.[11]

I am entirely satisfied that Priority was and is entitled, after notice of specific charges, to an evidentiary hearing before its operating authority shall be cancelled. That hearing should encompass simultaneously such factors as may be claimed to predicate the "Emergency Order of Revocation" and the "Termination of Exemption", which, combined, constitute Priority's operating authority. Any orders thereafter entered should be subject to review by the National Transportation Safety Board.

9. *See also* Overseas Media Corporation v. McNamara, 128 U.S.App.D.C. 48, 57–58, 385 F.2d 308, 317–318 (1967). There we rejected the Government's contention that the Secretary's action had been committed to agency discretion and hence was unreviewable, *id.,* at 317–18.

10. 110 U.S.App.D.C. 262, 265, 292 F.2d 755, 758 (1961). There it will be seen the Board had issued its notice of proposed rule-making and otherwise had comported its course of action to pertinent requirements. The same situation existed in O'Donnell v. Shaffer, 160 U.S.App.D.C. 266, 269, 491 F.2d 59, 62 (1974) where Judge Bazelon noted that the rule was one of general application and that notice of rule-making had been given and pertinent

comments had been received and considered. *Cf. also* American Airlines, Inc. v. Civil Aeronautics Board, 123 U.S.App.D.C. 310, 317, 318, 359 F.2d 624, 631, 632 (*en banc*), cert. denied 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966).

11. Since the Board held that it was restricting its decision "to the determination that the Board lacks jurisdiction under the appropriate statute, to review—i. e. to hold a hearing and adjudicate—an appeal from the termination of respondent's exemption", we rule otherwise. We are persuaded that the agency has misconceived the law which should govern under the circumstances presented on this record. *Cf.* Securities Comm'n v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943).