**Loren L. FLOREY, Plaintiff,**

v.

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL and Northwest Airlines, Inc., Defendants.**

No. 4–77–Civ. 223.

United States District Court, D. Minnesota, Fourth Division.

Sept. 26, 1977.

As Amended Nov. 15, 1977.

---

Gary Green, Daniel M. Katz, Attys., Washington, D.C., Patrick A. Brennaman and Owen J. Dratler, Minneapolis, Minn., for defendant Air Line Pilots.

David A. Ranheim, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for defendant Northwest Airlines.

## MEMORANDUM ORDER

LARSON, District Judge.

Plaintiff, a retired commercial airline pilot, has instituted this suit against his former employer, Northwest Airlines, Inc. (NWA), and his former labor union, Air Line Pilots Association, International (ALPA), making various allegations of impropriety in connection with the revocation of his first class medical certificate by the Federal Aviation Administration (FAA) and with his subsequent "forced retirement." Defendant ALPA filed motions to quash service and to dismiss the complaint for failure to state a cause of action. NWA subsequently entered its own motion to dismiss for failure to state a claim or, in the alternative, for summary judgment.

ALPA's motion to quash service was brought on the grounds that process was not properly served. Service was made upon a local office of ALPA by certified mail and upon an ALPA attorney in Washington, D.C., personally. ALPA contends that neither of these procedures complies with the rules of civil procedure. Specifically, ALPA correctly contends that service outside the State is effective under Federal Rule of Civil Procedure 4(f) only if authorized by State statute. Minnesota long arm statutes permit out-of-state service only upon nonresident defendants. See Minn. Stat. §§ 303.13 and 543.19. ALPA is a resident of Minnesota, because its members reside in this State. *R. H. Bouligny, Inc. v. United Steelworkers of America*, 336 F.2d 160 (4th Cir. 1964). Thus, service in Washington is ineffective. ALPA also argues that Rule 4(d)(3) requires local service upon residents to be made personally. Since the

Russell J. Jensen, St. Paul, Minn., for plaintiff.

only service made within Minnesota was mailed, ALPA concludes, the Court must quash service.

Plaintiff defends local service by mail in this case on the authority of Rule 4(d)(7), which permits service in accordance with State law, and some early Minnesota case law, which indicates that where service is made by mail and actually reaches the party to be served within the required time, it is equivalent to personal service. *See e. g., State v. Pierce*, 257 Minn. 114, 100 N.W.2d 137 (1959); *Van Aernman v. Winslow*, 37 Minn. 514, 35 N.W. 381 (1887). The Court doubts that the case law cited by plaintiff may be relied on, however, for it antedates the promulgation of the Minnesota Rules of Civil Procedure, which track the Federal rules in most respects, including the service provisions of Rule 4. The Court understands that State officials do not serve civil process by mail.

■ The Court will nonetheless deny defendant's motion to quash service in this case. The Court takes judicial notice that the United States Marshall in this district has undertaken to serve civil summons and complaints by certified mail. Prior to the use of the mails, the Marshal had incurred a substantial deficit as a result of the disparity between the actual cost of personal service and the maximum statutory fee for civil process. Use of the mails produces a substantial savings, yet it is as effective as personal service. The certified mail receipt provides a record of the date of delivery and of the identity of the recipient. The Marshal notified local counsel of its program in two local journals, *Hennepin Lawyer*, November-December, 1976, p. 26, and *Ben & Bar*, Vol. 33, No. 5 (November 1976), p. 16. The Marshal has employed this program for nearly a year now in thousands of cases and the Court is unaware of any previous objections.

■ ALPA has suffered no prejudice by the method of service implemented by the U.S. Marshal. It has already appeared before the Court in connection with its motion to dismiss. ALPA has a local office, and if a motion to quash were granted here, the Marshal could easily serve ALPA again. The Court views this motion to quash as a dilatory action. Plaintiff has relied in good faith on the Marshal's program, and should not be penalized. To grant this motion would merely postpone disposition on the merits and could result in a new hearing on the very issues already before the Court. Under the circumstances of this case, the motion to quash is without merit.

ALPA has also filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. NWA has entered a motion to dismiss or, in the alternative, a motion for summary judgment. Before discussing the merits of those motions, it is useful to summarize the sequence of events giving rise to plaintiff's complaint.

In 1972 representatives of NWA approached plaintiff concerning his need to enter an alcohol rehabilitation program. ALPA representatives were summoned and, after a meeting with all parties present, ALPA recommended that plaintiff submit to the program. NWA granted a short leave of absence without pay to accommodate that end. The program lasted four months, after which plaintiff returned to the service of NWA. The FAA had apparently learned of plaintiff's status for it thereafter conditioned plaintiff's continued certification as a commercial airline pilot upon semiannual physicals and semiannual satisfactory reports from both defendants. For some time plaintiff continued to pilot NWA aircraft without incident. In 1976, however, ALPA refused to issue a letter to the FAA "attesting" to the sobriety of the plaintiff. Thereupon, the FAA medical examiner revoked plaintiff's medical certificate. Since he could no longer pilot aircraft for NWA, NWA permitted plaintiff to take an early retirement. Plaintiff has filed no grievances, complaints or petitions for review or appeal with ALPA, NWA or the FAA. Plaintiff makes no claim against the FAA. Plaintiff seeks to recover from NWA and ALPA back pay both for the four month period during which he was on leave without pay in 1972 and for the period

beginning at the date of the "termination" and extending to his expected date of normal retirement. He also seeks punitive damages and attorneys' fees.

Plaintiff's complaint is difficult to parse, and his memoranda in opposition to defendants' motions to dismiss are of little assistance in understanding his view of the legal relations between plaintiff, the FAA, ALPA and NWA. For example, the facts he alleges indicate that the gravamen of plaintiff's complaint is the revocation of his certificate by the FAA, but he makes every effort to attribute liability to ALPA and NWA.

The bulk of plaintiff's argument suggests that ALPA has breached its duty of fair representation, causing his injuries, and that ALPA is therefore liable to him in damages. ALPA contends, on the other hand, that this case has nothing to do with the duty of fair representation because plaintiff's difficulties involved the FAA, not NWA. NWA supplements ALPA's argument by noting the statutory provisions prescribing procedures for appeals from FAA actions.

Plaintiff's analysis under his unfair representation claim implicates a large number of actions and omissions by ALPA. The most significant of these involve ALPA's alleged relationship with the FAA. Plaintiff contends that ALPA played some impermissible role in establishing the conditions attached to the renewal of his medical certificate by the FAA. Moreover, plaintiff alleges that ALPA's refusal to attest to plaintiff's sobriety "forced" the FAA to rescind his certification. Plaintiff further argues that ALPA somehow prevented the FAA from according him a hearing concerning the revocation of his certificate. There are other alleged violations of the fair representation duty but the Court will focus on those enumerated above for the present.

■ To understand the contours of the duty of fair representation it is useful to review its origins.

"The federal labor laws, in seeking to strengthen the bargaining position of the average worker in an industrial economy, provided for the selection of collective-bargaining agents with wide authority to negotiate and conclude collective bargaining agreements on behalf of all employees in appropriate units, as well as to be the employee's agent in the enforcement and administration of the contract. Wages, hours, working conditions, seniority, and job security therefore became the business of certified or recognized bargaining agents, as did the contractual procedures for the processing and settling of grievances, including those with respect to discharge." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976).

The exclusive power of these agents, elected by the majority, necessarily "extinguishes the individual employee's power to order his own relations with his employer." *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967). Thus the majority, in its election of a representative, assumes a substantial power over the interests of the minority groups. In order to ensure that "no individual union member may suffer invidious, hostile treatment at the hands of the majority of his co-workers," *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971), the courts have established the doctrine of fair representation which imposes "upon the bargaining agent a responsibility equal in scope to its authority." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976). Representatives who abuse their fiduciary duty are liable in damages, under this doctrine, to injured members of the union.

■ Although both the power and the duty of the bargaining agent to act are broad, neither is without limit. Implicit in every opinion imputing the fair representation duty to a union is some controversy concerning the enforcement or administration of the employment contract. Plaintiff's complaint presents no contractual controversy; rather, plaintiff challenges the actions of ALPA as they influenced the

decisions of a Federal administrative agency. It is true that ALPA's failure to issue a favorable report on plaintiff's behalf played an important role in the FAA decision to revoke plaintiff's medical certificate and that the revocation in turn had an inescapable effect on plaintiff's employment. But ALPA's capacity in the FAA certification program was at most an advisory one. Plaintiff has alleged no facts to justify an inference that ALPA manipulated the FAA in order to sabotage him indirectly. Thus a link between ALPA's actions and any abuse of plaintiff's contractual interests is tenuous.[1] Moreover, courts justify the fair representation duty on the need to circumscribe the exclusive discretion possessed by the union. ALPA owed plaintiff no duty of representation before the FAA, nor did its assistance to the FAA prevent plaintiff from procuring independent representation or representing himself before the FAA. Thus the exclusivity factor is absent. Finally, while ALPA owed plaintiff a duty to act as his agent with NWA, plaintiff never called upon ALPA to act in that role. Thus the Court can find no rationale that would justify application of the doctrine of fair representation to the facts alleged by plaintiff.

The Court is not without sympathy for plaintiff's sense of betrayal. ALPA assumed an inconsistent posture—serving both as plaintiff's advocate and as the FAA's watchdog—that must inevitably have created a rift between plaintiff and ALPA. ALPA's authority to assist the FAA is unclear and, if ALPA intended its action to benefit plaintiff, that purpose was lost on its intended beneficiary. Still, ALPA's actions cannot be fairly said to have implicated the sort of concerns that give rise to the doctrine of fair representation. ALPA's liability to plaintiff, if any, must be measured under standards other than those of the doctrine of fair representation.

Plaintiff's unfair representation claim falls for another reason.

"In order to state a claim of unfair representation, the plaintiff

\* \* \* must have more than conclusory statements alleging discrimination. In particular plaintiffs must make a showing that the action or inaction \* \* \* complained of was *motivated* by bad faith, for the gravaman (sic) of the rule is 'hostile discrimination.' An allegation that certain conduct of the [Union] \* \* \* is 'invidious' and 'discriminatory,' without a concomitant identification of lack of good faith, will not set forth a claim sufficient to call for the use of the Steele doctrine [*Steele v. Louisville & Nashville R. R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944)].

*Gainey v. Brotherhood of Railway & Steamship Clerks*, 313 F.2d 318, 323 (3rd Cir. 1963) (emphasis supplied.)" *Augspurger v. Brotherhood of Locomotive Engineers*, 510 F.2d 853, 859 (8th Cir. 1975).

Though plaintiff's complaint is replete with legal conclusions that ALPA discriminated against plaintiff, it is devoid of facts that would justify an inference of impermissible motive.[2] Significantly, plaintiff does not even allege that he had never experienced difficulty with alcohol. Nor does plaintiff allege that ALPA used his alcoholism as a pretext to disguise other proscribed motives. The most that could be inferred from the facts alleged is a misguided intermeddling in affairs beyond the proper scope of a union's duties. That is not

1. Plaintiff relies heavily upon *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87 (3d Cir. 1968), for the proposition that any action of the union that affects its members is subject to the doctrine of fair representation, but plaintiff mistakes the holding of that decision. That court expressly refused to permit recovery on an unfair representation claim because of a failure to exhaust internal union remedies.

2. Plaintiff appears to contend that alcoholism is an impermissible consideration much like race or religious preference. The Court cannot accept such a contention and relies upon the conclusion of the FAA that alcoholism is incompatible with piloting commercial aircraft. See 14 C.F.R. §§ 67.13(d)(1)(i)(c), 67.-15(d)(1)(i)(c), and 67.17(d)(1)(i)(c).

enough. *See Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Vaca v. Sipes,* 369 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

■ Thus far the Court has discussed only those allegations pertaining to ALPA's alleged involvement with the FAA. Plaintiff makes two other allegations of impropriety against ALPA. First, plaintiff complains that ALPA's representation of him in 1972 was inadequate. This claim could give rise to a potentially troublesome statute of limitations question, *see Butler v. Local Union 823,* 514 F.2d 442, 447–48 (8th Cir. 1975), but the Court need not reach that issue. Here again plaintiff fails to allege any substantial indicia of bad faith. Moreover, plaintiff accepted the leave of absence voluntarily. In addition, plaintiff would face insurmountable hurdles in the exhaustion of remedies doctrine against either ALPA or NWA on this claim. *See Brady v. Trans World Airlines, Inc.,* 401 F.2d 87, 104 (3d Cir. 1968) (applying bar to claim against union).

■ Plaintiff's remaining unfair representation claim appears to be that ALPA failed to provide him with a promised alcohol rehabilitation program. It is impossible to perceive the relation of this claim to the doctrine of fair representation. Plaintiff may intend to allege a contract claim of some sort, but his complaint as it stands does not sufficiently identify the source or nature of ALPA's obligation to plaintiff to justify any relief in this regard.

Though plaintiff desires recovery from ALPA, plaintiff's attentions would better be directed at the FAA. Under 49 U.S.C. §§ 1421–1429, the FAA Administrator bears the responsibility to promulgate and enforce rules for the safe regulation of civil aeronautics. In particular, 49 U.S.C. § 1422 confers on the Administrator the power to regulate and issue airman certificates which authorize individuals to serve on commercial aircraft. The FAA Administrator has promulgated regulations to help accomplish his duties. Under 14 C.F.R. § 61.3(c) individuals desiring a pilot certificate must pro-cure a medical certificate. 14 C.F.R. §§ 67.13(d)(1)(i)(c), 67.15(d)(1)(i)(c) and 67.-17(d)(1)(i)(c) provide that individuals with a history of alcoholism may not receive medical certificates. The FAA Administrator has delegated the responsibility for determining qualifications for medical certificates to the Federal Air Surgeon and others pursuant to 49 U.S.C. ·§ 1355(a). *See* 14 C.F.R. § 67.25(a) and (c).

Specific statutes govern review of actions taken by the FAA or its agents that affect any person. Under 49 U.S.C. § 1429, the FAA is obligated to provide the holder of a medical certificate a hearing before issuing any order amending, suspending or revoking such certificate. *See* 14 C.F.R. § 67.27. Under 49 U.S.C. § 1355(b), a person affected by any action taken by any private person exercising authority delegated by the Administrator may apply for reconsideration of such action by the Administrator. *See* 14 C.F.R. § 67.25(b). The Administrator's orders are appealable to the National Transportation Safety Board under 49 U.S.C. § 1903(a)(9). Orders of that agency, in turn, are appealable to the United States Courts of Appeals under 49 U.S.C. § 1486.

■ Thus, it is plain that Congress intends that the FAA shall regulate the certification of commercial pilots. Congress also plainly intends that individuals injured by actions of the FAA should pursue the remedies within that agency. This Court has no authority to restore plaintiff's medical certificate. *Cf. Priority Air Dispatch, Inc. v. NTSB,* 514 F.2d 1335, 1336 (D.C.Cir.1975). It would make little sense to permit plaintiff to sue private parties for damages that a prompt and proper administrative appeal might have prevented when he has disregarded the extensive procedural protections specifically applicable to his situation. The Eighth Circuit has ruled in somewhat analogous cases that the complaint should be dismissed in favor of the primary jurisdiction of the appropriate administrative agency. *See Anderson v. UTU,* 557 F.2d 165 (8th Cir. 1977); *Augspurger v. Brotherhood of Locomotive Engineers,* 510 F.2d 853 (8th Cir. 1975). Had plaintiff stated a cause of

action against ALPA, the doctrine of primary jurisdiction might have applied here.

In sum, plaintiff has failed to state an unfair representation claim against ALPA. Plaintiff had attempted to piggyback in a claim against NWA on the grounds that once the Court assumed jurisdiction over a union in an unfair representation case, it is automatically appropriate to assume jurisdiction over the employer. Plaintiff conceded in his memorandum, however, that "[e]xcept to the extent that Northwest concurred, most of the injury complained of by plaintiff occurred at the instance of defendant ALPA." Plaintiff has not alleged any specific contractual breaches against NWA. Moreover, plaintiff has conceded that his exclusive remedy for such claims against NWA would lie with the Northwest Airlines Pilots' System Board of Adjustment. Agreement between Northwest Airlines, Inc., and the Air Line Pilots in the service of Northwest Airlines, Inc., §§ 19, 20, and 21. Plaintiff must exhaust his contractual remedies with NWA before this Court can take cognizance of his claims. *See Andrews v. Louisville & Nashville R. R.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Dones v. Eastern Air Lines, Inc.,* 408 F.Supp. 1044 (D.Puerto Rico 1975); *Ciaccio v. Eastern Air Lines, Inc.,* 354 F.Supp. 1272, 1275 (E.D.N.Y.1973); *West v. American Airlines, Inc.,* 352 F.Supp. 1278 (N.D.Ill.1972). Thus the Court need not face any breach of contract claim against NWA.

Two matters remain for discussion. First, plaintiff implies in various parts of his complaint that both NWA and ALPA abused his constitutional rights to due process and equal protection. Cases too numerous to recite have held that neither the Fifth nor the Fourteenth Amendments to the Constitution restrict private conduct. *See e. g. Driscoll v. Int. Union of Operating Engineers,* 484 F.2d 682 (7th Cir. 1973), *cert. denied* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575; *Aikens v. Abel,* 373 F.Supp. 425, 434 (W.D.Pa.1974). Plaintiff has made no effort to link the actions of either NWA or ALPA to either Federal or State action.

Plaintiff also relies on an implied cause of action under the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act Amendments of 1974 and 1976, 42 U.S.C. §§ 4541, *et seq.* The Court concludes that that legislation does not confer any private cause of action against private employers or unions. Nor can it be understood to confer on alcoholics the sort of protections bestowed on racial and religious minorities by the Fourteenth Amendment and civil rights legislation.

IT IS ORDERED:

1. That the motion of Air Line Pilots Association International to quash service is denied.

2. That the motion of Air Line Pilots Association International to dismiss the complaint in its entirety is granted.

3. That the motion of Northwest Airlines, Inc., to dismiss the complaint in its entirety is granted.